336 So.2d 423 (1976)
SEABOARD COAST LINE RAILROAD COMPANY, Appellant,
v.
Nancy Hagan GARRISON et al., Appellees.
No. 75-1672.
District Court of Appeal of Florida, Second District.
August 4, 1976.
Rehearing Denied September 10, 1976.
M. David Alexander and Dabney L. Conner, of Boswell, Boswell & Conner, Bartow, for appellant.
Kenneth L. Connor, of Gibson & Connor, Lake Wales, and Summerlin & Connor, Winter Haven, for appellees.
*424 SCHEB, Judge.
This appeal is from a judgment entered in favor of the appellees/plaintiffs in a wrongful death action. The question posed is a novel one to Florida law; i.e., Is expert testimony concerning future inflationary trends admissible as a basis to determine the estimated value of loss of future support for a decedent's survivor?
Elijah Hagan died on August 30, 1974, in a crossing accident between an automobile driven by him and appellant/defendant's train. Hagan, a truck driver, was 46 years old at the time of the accident. Testimony showed he was a good and reliable employee. The decedent's estate and his surviving child, Timothy Bankston, age 5, recovered judgments against the appellant Railroad and David Barnaby Bach. We affirm.
Appellant contends that the court erred in permitting the plaintiff's economist, Dr. Roberts, to give expert testimony to the effect that inflation would probably continue at a minimum annual rate of 5% for the next thirteen years; i.e., until the decedent's son attained his majority. This testimony occurred when Roberts was calculating the loss in support money caused by Hagan's death. Roberts' calculations were based on the premise that had Hagan lived, the amount of his money available for support and so used would have kept up with inflation. Dr. Roberts, a professor of economics at the University of Tampa, based his testimony upon what he called "reasonable economic probability" which was derived from historical trends. Appellant, relying primarily on Johnson v. Penrod Drilling Co., 5th Cir.1975, 510 F.2d 234 (a case brought under the Jones Act), says that such testimony as to future rates of inflation is too speculative and should not be permitted.
Neither party has cited us to a Florida case on point, and our own research has not disclosed any. However, while novel to Florida, this question has been frequently decided elsewhere, and numerous recent cases both permit[1] and prohibit[2] such testimony. See Annot., 12 A.L.R.2d 611, § 15. We think that to require the finder of fact to ignore evidence of reasonably predictable inflationary trends is inconsistent with the realities of present day economics. We align ourselves with the courts that permit such testimony.
First, even in the absence of any evidence whatsoever on this matter, we think it likely that juries will consider the impact of future inflation. Inflation has become a fact of life within the experience of everyone. It has continued to a greater or lesser extent throughout most of our lifetimes. Most people have found it necessary to reckon with this in their own financial planning for the future. Certainly juries, which are drawn from citizens from every walk of life, are aware of the effects of inflation. Quite likely they will be prone to consider it in their attempts to fully compensate a plaintiff.[3] On this premise, we think it *425 proper that their judgments be aided by such competent expert testimony as may be relevant to this issue.
Second, the mere fact that the future rate of inflation is uncertain is not a sufficient ground to prohibit the jury from considering expert testimony as to inflationary trends. Juries are constantly called upon to evaluate the effect of future or hypothetical events. As the court stated in United States v. English, 9th Cir.1975, 521 F.2d 63:
"While predicting future inflationary trends, or extrapolating from present ones, may be speculative, so are most predictions courts make about future incomes, expenses (as, for example, in the case of the wrongful death of an infant). Since it is still more probable that there will in the future be changes in the purchasing power of the dollar, it is better to try as best we can to predict them rather than to ignore them altogether."
Third, we note that Standard Jury Instruction 6.10 requires Reduction of Damages to Present Value, and failure to instruct the jury on this point is error. Norman v. Mullin, Fla.App.2d 1971, 249 So.2d 733. This instruction is based on the concept that the plaintiff will be able to profitably invest his award, so that less money is required now to compensate him for money which, absent defendant's negligence, he would not have received until some future time. Yet, the Standard Jury Instruction fails to mention any specific interest rate. The matter is for determination by the jury within reasonable limits. Renuart Lumber Yards, Inc. v. Levine, Fla. 1950, 49 So.2d 97. And, expert opinion on the proper discount rate is commonly received for this purpose. 25A C.J.S. Damages § 194; 22 Am.Jur.2d, Damages, § 96 at n. 14.
In the present case, Dr. Roberts used an interest rate of 7% in his calculations, while on cross-examination appellant vigorously attempted to get Dr. Roberts to admit that safe investments were available paying 8% or higher. A higher interest rate would, of course; result in a smaller present value. But, it does not seem fair to us to allow the defendant to argue for the use of a high anticipated interest rate as a basis of discounting an award, without allowing the plaintiff to show that the purchasing power of the money he receives and invests may be substantially offset by increases in the cost of living. To this extent, we disagree with Penrod, supra, in which the Fifth Circuit held that inflation could not be considered and that future damages must be "reduced to present value by the use of an appropriate interest rate prevailing at the time and place of trial." 510 F.2d at 237. We think fairer results may be obtained by following the procedure used in the instant case; i.e., permitting expert testimony not only on future inflation, but also on the interest rate used in computing the present value of the award. With all the evidence before it, the jury will better fulfill its function of awarding a sum which, when invested, will fairly compensate the plaintiff for future losses caused by the defendant's negligence.[4]
Finally, while some consideration of probabilities becomes essential to determination of a fair award, we do not intend for our courts to be open to unbridled speculation *426 on the matter of inflation. As was stated in United States v. English, supra:
"Nor do we intend to have our holding of today read as authorizing the court to arbitrarily draw an estimate of inflation out of thin air. As with any other element of damages, we must require the estimate of future inflation to be supported by competent evidence... . By our holding we allow the trier of fact in awarding damages to take into account only such estimates of future changes in the purchasing power of money as are based on sound and substantial economic evidence, and as can be postulated with some reliability."
Dr. Roberts' expertise in economics was established. His projections fell within guidelines we have outlined and the trial court was eminently correct in permitting his expert testimony on the subject.
Our examination of the record and briefs persuades us that there is no merit in the appellant's remaining contention that the trial judge erred in admitting evidence establishing the plaintiff's decedent as father of the appellee Timothy Bankston.
Accordingly, the judgment of the trial court is affirmed.
McNULTY, C.J., and HOBSON, J., concur.
NOTES
[1] Schnebly v. Baker, Iowa 1974, 217 N.W.2d 708; Loetzerich v. Texas Pacific-Missouri Pacific Terminal R.R., La. App. 1976, 325 So.2d 626; Resner v. Northern Pacific Ry., 1973, 161 Mont. 177, 505 P.2d 86; Plourd v. Southern Pacific Transportation Co., 1973, 266 Or. 666, 513 P.2d 1140; United States v. English, 9th Cir.1975, 521 F.2d 63 (applying Cal. law). Some courts have taken the intermediate view that while juries may generally take inflation into account, evidence should not be permitted which would project a specific rate of inflation years in the future. See, Bach v. Penn Central Trans. Co., 6th Cir.1974, 502 F.2d 1117; Riha v. Jasper Blackburn Corp., 8th Cir.1975, 516 F.2d 840 (applying Neb. law); Johnson v. Serra, 8th Cir.1975, 521 F.2d 1289 (applying Minn. law).
[2] In addition to Penrod, supra, see Henderson v. S.C. Loveland Co., N.D.Fla. 1975, 396 F. Supp. 658; Sleeman v. Chesapeake and Ohio Ry., 6th Cir.1969, 414 F.2d 305; Williams v. U.S., 1st Cir.1970, 435 F.2d 804 (applying R.I. law); Frankel v. Heym, 3d Cir.1972, 466 F.2d 1226. This view is supported in 2 F. Harper & F. James, Law of Torts, § 25.11 (1956).
[3] The problem is not new. In 1921 the Supreme Court of Vermont in Halloran v. New England Telephone & Telegraph Co., 1921, 95 Vt. 273, 115 A. 143, said:

"So it is that, at least so far as those elements of damages properly classed as pecuniary losses  like loss of time, loss of earning power, expenses and the like  are concerned, it is proper for the jury to take into consideration the fact, known to everybody, that the purchasing power of money is at present seriously impaired. And it is so held by the courts."
[4] An equivalent approach was utilized in Feldman v. Allegheny Airlines, Inc., D.Conn. 1974, 382 F. Supp. 1271, aff'd. in relevant part, 2nd Cir.1975, 524 F.2d 384. There, instead of computing the effect of inflation on future earnings and then reducing to present value using a high interest rate, the court achieved the same result by using an "inflation adjusted discount rate." That rate is obtained by subtracting the projected rate of inflation from the projected interest rate. The Connecticut court used an inflation adjusted discount rate of 1.5%, while Dr. Roberts in effect adopted an inflation adjusted discount rate of 2%. We think the approach of the Connecticut court could be beneficial because fewer calculations are involved. This could simplify the burden on the jury, particularly in a case involving conflicting economic testimony.