419 So.2d 681 (1982)
BUNNELL MEDICAL CLINIC, P.A., Appellant,
v.
Eduardo BARRERA, M.D., Appellee.
No. 81-1172.
District Court of Appeal of Florida, Fifth District.
August 25, 1982.
Rehearing Denied September 24, 1982.
*682 Stephen P. Sapienza, Flagler Beach, for appellant.
Robert K. Rouse, Jr., of Smith, Schoder & Rouse, P.A., Daytona Beach, for appellee.
ORFINGER, Chief Judge.
Appellant medical clinic and appellee physician entered into an employment contract in 1976 wherein appellee agreed to furnish medical services in appellant's emergency room. When an action for malpractice was filed against appellee for an incident which occurred in 1977, he requested that appellant provide him with a defense and indemnify him against any judgment for damages because, so appellee alleged, appellant had breached a provision of the employment contract which required appellant to provide malpractice insurance for appellee. When appellant refused, appellee sued to recover damages because of the alleged breach. The trial court determined the contract to be unambiguous and granted appellee's motion for summary judgment as to liability. Appellant appeals from this partial summary judgment.[1] We reverse.
The contract provision in question says:
"Company shall during the term of this contract, perform the following obligations and undertakings:
(a) Furnish and carry adequate malpractice insurance to cover the activities of Barrera, provided he is insurable by company's insurer."
Appellant's answer to the complaint admitted that it was obligated to pay for appellee's malpractice insurance, but alleged affirmatively that, because of the personal nature of malpractice insurance, appellee was required to personally apply for and obtain such insurance, which he *683 failed to do; that appellant could not furnish the insurance unless appellee applied for it, and that this was the customary procedure followed in the appellant's business.
Supporting appellee's motion for partial summary judgment was his affidavit stating that his qualifications for malpractice insurance coverage in 1976 and 1977 had not changed from those in 1979 and that his 1979 application for malpractice insurance had been approved. Sworn answers to written interrogatories by a representative of the insurance carrier stated that the company never received an application for insurance from appellee for 1976 or 1977, but assuming that his qualifications were the same in those years as they were in 1979, appellee would have been insurable by that company. Implicit in these answers, however, is the apparent requirement that an application for insurance be filed, and admittedly no application was filed for the period in question here.
In opposition to the motion for summary judgment, appellant produced testimony that in 1976 all emergency room physicians, including appellee, had been reminded of the importance of applying for malpractice insurance, that industry practice required each physician to make the application and secure the insurance, and that appellant would pay the premium when insurance was obtained; that in 1976, when appellee became a member of the local medical society, he had secured the signature of the secretary of the medical society on an insurance application, and was aware of the practice.
The court entered the partial summary judgment for appellee, finding that there was no ambiguity in the contract, that there was no genuine issue as to any material fact on the issue of liability, and that appellee was entitled to partial summary judgment as a matter of law on the issue of liability. After rehearing was denied, this appeal followed.
Interpretation of a contract is generally a question of law for the court, rather that a question of fact. Peacock Construction Co., Inc., v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977). However, when the wording of an agreement is ambiguous and the parties present different interpretations, the issue of proper interpretation can become one of fact, thus precluding summary judgment. Griffin Builders Supply, Inc. v. Jones, 384 So.2d 265 (Fla. 2d DCA 1980); Westchester Fire Insurance Co. v. In-sinkerator, 252 So.2d 856 (Fla. 4th DCA 1971).
It is clear from the agreement here that appellant agreed to provide insurance for appellee, but the agreement is silent on the question of how and by whom that insurance is to be applied for or by whom and by what means Barrera's insurability would be determined. This appears to create a latent ambiguity in the agreement. A latent ambiguity has been defined as one where the language in a contract is clear and intelligible and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two possible meanings. Hunt v. First National Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA 1980); Drisdom v. Guarantee Trust Life Insurance Company, 371 So.2d 690 (Fla. 3d DCA 1979).
If, as asserted, insurance could only be obtained by appellee's personal application, then it would be an unfair and inequitable interpretation to hold appellant liable for failure to obtain the insurance when appellee's own failure to act prevented the happening of the required event. A contract should be interpreted in a manner that produces a fair and equitable result. Hunt, 381 So.2d at 1197.
Because of the latent ambiguities in the agreement, parol evidence was admissible to show the intent of the parties, Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976), and the existence of issues of fact and conflicting inferences to be drawn from the evidence precluded summary judgment. Burris v. Jacobson, 417 So.2d 787 (Fla. 5th DCA 1982); Kirsch v. Mannen, 393 So.2d 63 (Fla. 3d DCA 1981).
*684 The summary judgment determining liability in favor of appellee is reversed, and the cause is remanded for further proceedings.
REVERSED and REMANDED.
DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] Fla.R.App.P. 9.130(a)(3)(C)(iv).