452 So.2d 49 (1984)
CROWN MANAGEMENT CORPORATION, Now Known As Crown Pontiac, Inc., a Delaware Corporation; Royal Trust Bank of Florida, N.A., Formerly Known As Century First National Bank of St. Petersburg and As the First National Bank of St. Petersburg, a National Banking Corporation, Appellants,
v.
Marvin J. GOODMAN and Lucille Goodman, His Wife, Mark R. McGarry and Norma Jean McGarry, His Wife, Joseph L. Goodman, Charles O. Lowe, C. Eugene Lowe and Cassandra D. Lowe, His Wife, Katherine Suzanne Lowe, Francis M. Wells, Jr., and Judith L. Wells, His Wife, Appellees.
Nos. 83-2035, 83-2098.
District Court of Appeal of Florida, Second District.
May 11, 1984.
Rehearing Denied June 15, 1984.
*50 Richard T. Earle, Jr., of Earle & Earle, St. Petersburg, Joseph W. Letzer of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for Crown Management Corp.
Zala L. Forizs of Blasingame, Forizs & Smiljanich, St. Petersburg, for Royal Trust Bank of Florida, N.A.
H. Rex Owen, Bruce Crawford of Owen & McCrory, St. Petersburg, for appellees.
SCHEB, Judge.
This appeal centers on the necessity of the court receiving parol evidence in interpreting a rent escalation clause in a commercial lease. The trial court found that two sentences in the clause created an ambiguity. Appellants contend the court erred, however, when it declined to consider parol evidence of the parties' intent as to the correct interpretation. We think the appellants' argument on this point is correct.
On October 9, 1969, appellant Crown Management Corporation entered into a 99-year lease with appellees as lessors. The lease provided in paragraph 5 that the rental payments
shall be adjusted and escalated and increased or decreased and, commencing *51 with the first five year period and thereafter on each succeeding one year period the Lessee agrees to pay to the Lessor, ... an additional sum determined by multiplying the rental payments set forth in the Lease or established by the latest review ... by the percentage increase, if any, in the level of the Official Consumer Price Index... . Each one point increase in the index shall represent a one percent increase in the lease rentals on the then current rental basis for that period and each one point decrease in the index shall represent a one percent decrease from the then current rental base for that period.
(Emphasis added.)
Crown made the lease payments as calculated by the lessors, but in March 1982 its accountants discovered the lessors had computed rental increases based on each index point as opposed to a percentage increase in the Consumer Price Index (CPI). Thereafter Crown made its rental payments under protest. Crown's accountants determined that as a result of computing the rental on this basis, that from October 15, 1969, to October 15, 1983, Crown made an overpayment of $111,619.08.
In February 1983 Crown filed suit seeking a declaratory judgment as to the interpretation of the rent escalation clause, an accounting, and a judgment for rent overcharges paid, plus interest. Appellees, the lessors, counterclaimed for a declaration of rights and for collection of past due rent and attorney's fees.
After hearing testimony concerning the negotiations for the lease, the court determined that there was no fraud, overreaching, or other untoward action by any of the parties. Moreover, the court noted there was no evidence of mutual mistake by the parties, all of whom were experienced business people. Referring to paragraph 5 of the lease, the court found:
There is a patent ambiguity and conflict between the first and second sentences. The first sentence clearly states that the rental is to be increased "by the PERCENTAGE INCREASE, if any, in the  CPI", while the second sentence clearly states that the rental is to be increased one percent for each one point rise in the CPI which, except in the base year of the CPI, would always result in an increase in rental higher than the percentage increase in the CPI.
Having determined that the conflict between the first and second sentences was a patent one, the court, on reflection, concluded that much of the testimony presented at trial should not have been admitted. Furthermore, the court determined that the first and second sentences could be reconciled "only if the second sentence is construed as the practical application of the general principle set forth in the first sentence, even though that practical application is contrary to what the economists and legislators who prepare and authorize the CPI intend it to show." Accordingly, the trial judge entered a final judgment declaring that the lessors' determination of rentals computed in accordance with the second sentence of paragraph 5 was correct, and denying Crown relief. Crown filed a timely notice of appeal.
The parties agree that any adjustment to rental payments can be computed under the formula set out in the first sentence by reference to the CPI, but there is considerable disagreement as to the effect of the second sentence. While appellants agree that the two sentences create an ambiguity, they argue that the court erred in failing to resolve the conflict without benefit of parol evidence. Furthermore, they urge that the court erred in refusing to consider testimony concerning the potential economic effect of the lessors' interpretation of the escalation clause.
We think the trial court correctly found that the first and second sentences, which are repugnant, created an ambiguity. However, we think the court erred in deciding to disregard evidence bearing on the intent of the parties on the ground that the ambiguity was patent.
Historically, ambiguities have been distinguished as either latent or patent. This distinction has served as a basis for determining *52 whether or not to hear parol evidence. However, the necessity of considering parol evidence in interpreting ambiguities in contracts is well recognized. Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla. 1952). The rule differentiating latent and patent ambiguities in respect to admitting parol evidence has been criticized and even discarded in a number of jurisdictions. See 30 Am.Jur.2d Evidence § 1073 (1967). Still, as we pointed out in 1976, Florida courts have adhered to the distinction and ordinarily allow parol evidence where there is a latent ambiguity and reject it where there is a patent one. Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976). Only recently, one of our sister courts has indicated its dissatisfaction with this distinction:
Although there appears to be some divergence of opinion as to when parol evidence is properly admitted because of the latent ambiguity  patent ambiguity dichotomy, the distinction between the type of ambiguity involved is one of form over substance. The growing and better reasoned trend of authority indicates that the introduction of parol evidence to probe the true intent of the parties is proper, irrespective of any technical classification of the type of ambiguity present.
Royal Continental Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782, 784 (Fla. 4th DCA 1981). We tend to agree with the Fourth District's comments, but we must adhere to the distinction inasmuch as the rule is still in existence. See First Guaranty Corp. v. Palmer Bank and Trust Co., 405 So.2d 186 (Fla. 2d DCA 1981).
We have considerable difficulty in perceiving the difference between patent and latent ambiguities. It appears that a patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language. Drisdom v. Guarantee Trust Life Insurance Co., 371 So.2d 690 (Fla. 3d DCA 1979). Extrinsic evidence is inadmissible if the ambiguity is patent, because such evidence would, in effect, allow the court to rewrite the contract for the parties by supplying information the parties themselves did not choose to include. Hunt v. First National Bank, 381 So.2d 1194, 1196 n. 1 (Fla. 2d DCA 1980); Landis v. Mears. A latent ambiguity, on the other hand, is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings. Bunnell Medical Clinic, P.A. v. Barrera, 419 So.2d 681 (Fla. 5th DCA 1982); Hunt. In such instance, this evidence is required because the instrument itself does not provide sufficient insight into the intent of the parties. Morton v. Morton, 307 So.2d 835 (Fla. 2d DCA), cert. denied, 324 So.2d 90 (Fla. 1975).
Any ambiguity in the present case is latent. There is no ambiguity arising from any obscure or insensible language of the lease, but rather, the ambiguity arises from the failure to specify which sentence in paragraph 5 controls in determining rent increases.
While we accept appellants' argument that parol evidence is admissible in this case, we reject their further contention that the court erred in refusing to consider expert testimony on the effect of possible inflationary rates on the amount of future lease rentals. Here, there was no issue presented or testimony introduced as to unconscionability or unreasonableness of the rent as related to the value of the leasehold interest. Appellants' reliance on Seaboard Coastline Railroad v. Garrison, 336 So.2d 423 (Fla. 2d DCA 1976), is misplaced. Garrison is simply authority for the factfinder to consider the effects of inflation when making an award for a cognizable loss.
Accordingly, we affirm the trial court's determination that there is an ambiguity resulting from the conflict between the first and second sentences of paragraph 5 of the lease. However, we vacate the court's judgment and remand for further proceedings. The trial court shall consider the evidence previously received and may *53 hear any additional evidence bearing on the intent of the parties as to the correct interpretation of paragraph 5. Unless the trial court shall permit amendments to the pleadings, it is unnecessary for the court to receive evidence concerning the economic effects of any projected inflationary increases in rent.
BOARDMAN, A.C.J., and LEHAN, J., concur.