518 So.2d 427 (1988)
MULTITECH CORPORATION, a Florida Corporation, Appellant,
v.
St. JOHNS BLUFF INVESTMENT CORPORATION, etc., Appellee.
Nos. BP-166, BQ-369.
District Court of Appeal of Florida, First District.
January 12, 1988.
Michael G. Tanner and Mark G. Pennington of Gallagher, Baumer, Mikals, Bradford, Cannon & Walters, P.A., Jacksonville, for appellant.
Tyrie A. Boyer of Boyer, Tanzler & Boyer, P.A., Jacksonville, for appellee.
JOANOS, Judge.
Multitech Corporation (Multitech), appellant/defendant, appeals a summary final judgment entered in favor of St. Johns Bluff Investment Corporation (St. Johns), appellee/plaintiff. Multitech presents seven issues for our review. Briefly stated, these issues concern (1) St. Johns' standing to claim rights under the contract, (2) construction of ambiguities in the contract, (3) construction of the damages provision in the contract, (4) unconscionability of the damages provision in the contract, (5) presence of genuine fact issue vis-a-vis actual damages, (6) contradictions in the summary judgment order, and (7) the attorney's fee award. Since our resolution of the case turns upon two issues, the liquidated damages provision and the attorney's fee award, our discussion is directed primarily to these two points. We affirm in part, and reverse in part.
On July 17, 1985, St. Johns sued Multitech for breach of contract, claiming damages in the amount of $120,000. St. Johns alleged that under the terms of the agreement *428 between the parties, Multitech agreed to construct a road on land owned by St. Johns and that construction would be completed prior to June 30, 1985; that Multitech agreed to liquidated damages in the amount of $120,000 in the event it failed to complete the road within the agreed-upon time period; and that Multitech failed to complete the road as agreed, and was in default. On September 24, 1985, before Multitech answered the complaint, St. Johns filed its first motion for summary judgment.
On September 27, 1985, Multitech filed an answer, and as affirmative defenses maintained that (1) the alleged liquidated damages clause was unconscionable and unenforceable because it provided for a penalty rather than for liquidated damages; (2) if deemed enforceable, the liquidated damages clause would be effective only if the subject road were not "properly built" and would have no effect if the road was not built within the time period agreed; and (3) that St. Johns had no standing to bring the action.
The original agreement which is the subject of the complaint was entered into on January 10, 1984, with St. Johns as seller and Multitech as buyer. The agreement provided that Multitech would purchase two contiguous parcels, at $17,000 per acre. St. Johns owned properties on both the east and west sides of the tract purchased by Multitech. As part of the original agreement, St. Johns granted Multitech an Access Easement over its west property to the tract of land purchased by Multitech. Multitech agreed to construct a road over the Access Easement, and St. Johns agreed to provide a credit of $120,000 against the purchase price in return for the road construction. The agreement contained a provision for prevailing party attorney's fees and costs in connection with any litigation arising out of the contract.
On March 22, 1984, and on April 25, 1984, the parties entered into the First and Second Amendments to the agreement.
On September 10, 1984, the parties entered into the Third Amendment to the agreement. Paragraph six of the Third Amendment provided that by October 20, 1984, Multitech would contract for construction of a road "over the Access Easement and the Other Access Easement." The Other Access Easement traversed the property purchased by Multitech, and served as connector between St. Johns' West Property and East Property. Multitech warranted to St. Johns that construction over the Access Easement would begin no later than October 30, 1984, and would be completed by January 31, 1985, and that construction of the required road over the Other Access Easement would begin by January 30, 1985, and be completed by May 31, 1985. The default provision of the Third Amendment stated, in part:
If the Buyer defaults by failing to construct the road over the Access Easement and/or the road over the Other Access Easement, the Seller shall be entitled to actual damages, but in any event, not less than $120,000.00, the amount of credit given by the Seller to the Buyer against the purchase price of Parcels A and B, as consideration for Buyer agreeing to construct the road on the Access Easement.
On January 31, 1986, the parties entered into the Fourth (and final) Amendment to the agreement. This amendment recited that Multitech had requested that St. Johns extend the closing date and the completion date for construction and completion of the road over the Access Easement and the Other Access Easement. Paragraph seven of the amendment required Multitech to complete construction of the road over the Access Easement by March 1, 1985, and to begin construction of the road over the Other Access Easement by March 15, 1985, with completion date no later than May 31, 1985.
On March 28, 1985, St. Johns sold its property that was to be served by the Other Access Road to Soforenko First Homes, Inc. (Soforenko). Prior to June 30, 1985, William Driscoll, president of Multitech, contacted Soforenko and obtained its consent to complete the Other Access Road after June 30, 1985.
*429 On October 8, 1985, Multitech filed a motion for summary judgment, raising as grounds that: (1) St. Johns was not entitled to summary judgment because the liquidated damages clause was unenforceable as a matter of law, and (2) St. Johns was without standing to bring the action because it sold or contracted to sell the parcel of property to which the subject road leads, prior to June 30, 1985.
On May 29, 1986, St. Johns filed a renewed motion for summary judgment, supported by an affidavit of its president, John Trekell. The affidavit reflects that, in Trekell's opinion, St. Johns' land would have had an approximate value of $250,000 if the road had been completed, but had a value of approximately $120,000 without the road having been completed. Trekell's affidavit also states that St. Johns was deprived of the increased profits it would have enjoyed had the road been completed timely, and lost the interest it would have derived from investment of the profits.
On July 10, 1986, Multitech filed the affidavits of its president, Driscoll; of Max Gilbert, vice-president of Soforenko; and of Paul Scull, real estate expert. Driscoll's affidavit reflects that the $120,000 credit was the estimated cost for constructing the Access Road, and that in the Fourth Amendment it was agreed that Multitech would construct the Other Access Road. The Other Access Road was intended to provide St. Johns with Access to the property it sold to Soforenko on March 28, 1985. The Access Road was completed before the June 30, 1985, completion date, but the Other Access Road was not. The Gilbert affidavit reflects that Soforenko took into consideration the proposed construction of the Other Access Road in making its decision to purchase the property from St. Johns. The Gilbert affidavit also establishes that Soforenko granted Multitech permission to complete the Other Access Road after June 30, 1985, because it had no immediate plans to develop the property. The Scull affidavit reflects that in Scull's opinion, the existence or nonexistence of the Other Access Road had little or no effect on the value of lots owned by St. Johns which were served by the Access Road.
At the hearing conducted on St. Johns' renewed motion for summary judgment, Multitech's counsel argued that St. Johns was not damaged, because it had sold the Soforenko property on March 28, 1985, before the road completion date of June 30, 1985. In addition, counsel argued that Mr. Gilbert of Soforenko stated that Soforenko's decision to purchase the property was based in part on representations that the road would be built. Counsel also referred to the public works records which reflect that it cost Multitech over $140,000 to contract the first road, and over $300,000 to construct the second road.
On August 26, 1986, the trial court entered final summary judgment for St. Johns, awarding St. Johns $120,000 as liquidated damages, prejudgment interest, and reserving jurisdiction to award attorney's fees. On September 10, 1986, Multitech filed notice of appeal. On November 7, 1986, a hearing was held on St. Johns' motion to fix attorney's fees. St. Johns' counsel testified with regard to the matters set forth in his affidavit, that is, the time expended on the case, including the time anticipated for the hearing, discussions with Trekell regarding a reasonable fee, the eight factors set forth in the Code of Professional Responsibility, the novelty and difficulty of the questions, and fees charged in the area. Counsel stated his arrangement with his client contemplated $150 an hour as the minimum compensation. In addition, counsel stated that while this was not a contingency fee contract in the usual sense, there was an element of contingency because he agreed with his client that he would receive a reasonable fee in light of results obtained.
The trial court was presented with three expert opinions which established that a reasonable attorney's fee for St. Johns' attorney would be either $8,000 to $9,500; $24,000; or $30,000 to $35,000, respectively. The experts' opinions took into account the factors set forth in the Code of Professional Responsibility, and the possible applicability of the Rowe multiplier factor. *430 See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). The trial court found that a reasonable attorney's fee would be the same under either the Rowe formula or the eight factors listed in the Florida Bar Code of Professional Responsibility, Disciplinary Rule 2-106. On November 12, 1986, the trial court entered an order awarding an attorney's fee of $25,000. On November 21, 1986, Multitech filed notice of appeal of the attorney's fee order. The two appeals were consolidated by order of this court.
In light of the well settled rule that an appellate court will not consider or rule upon questions that were not presented to the trial court, we do not address St. Johns' purported lack of standing to enforce the provisions of the contract. See Dober v. Worrell, 401 So.2d 1322 (Fla. 1981); Atwood v. Hendrix, 439 So.2d 973 (Fla. 1st DCA 1983). Multitech asserted that St. Johns lacked standing to enforce the provisions of the contract because it was not listed as seller on the closing statement. The record reflects that this specific standing argument was not raised in the trial court. Therefore, we decline to consider whether St. Johns, as seller in the original agreement and four amendments thereto, lacked standing to claim rights under the modification provisions of the closing statement.
Turning to a consideration of the propriety of the award of summary judgment on the issue of damages, it is an established legal principle that "a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought." Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985), Universal Underwriters Insurance Company v. Steve Hull Chevrolet, Inc., 513 So.2d 218, 219 (Fla. 1st DCA 1987); Williams v. Bevis, 509 So.2d 1304, 1306 (Fla. 1st DCA 1987). Furthermore, "[i]f the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Id.; Taylor v. Kenco Chemical & Mfg. Corp., 465 So.2d 581 (Fla. 1st DCA 1985), and cases cited therein; Monroe County v. New Port Largo, Inc., 441 So.2d 173 (Fla. 3d DCA 1983). Thus, the burden of the moving party in a motion for summary judgment is to demonstrate that the facts show the party moved against cannot prevail. Burkett v. Parker, 410 So.2d 947, 948 (Fla. 1st DCA 1982).
Where, as in the instant case, the summary judgment determination requires construction of a written contract, the principles designed to aid in contract interpretation come into play. It is fundamental that courts should apply the most commonly understood meaning with regard to the subject matter and circumstances of the contract. Baker and Company, Florida v. Goding, 317 So.2d 118 (Fla. 3d DCA 1975), cert. denied, 328 So.2d 840 (Fla. 1976). It is equally fundamental that the intention of the parties to a contract should be determined from a consideration of the agreement as a whole; and that all the provisions of the agreement should be construed to render them consistent and harmonious, if at all possible. See 11 Fla. Jur.2d, Contracts § 121 (1979).
When the terms of the contract are uncertain or doubtful, the court may consider the interpretation advanced by the parties, when such interpretation is not completely at variance with the principles of correct legal interpretation. American Agronomics Corp. v. Ross, 309 So.2d 582 (Fla. 3d DCA), cert. denied, 321 So.2d 558 (Fla. 1975). If the language is ambiguous and susceptible of two interpretations, courts will approve the meaning which comports with logic and reason. Baker and Company, Florida v. Goding, citing Rupp Hotel Operating Co. v. Donn, 158 Fla. 541, 29 So.2d 441, 445 (1947). Ambiguities are generally construed against the drafter of the instrument. Bunnell Medical Clinic, P.A. v. Barrera, 419 So.2d 681, 683 (Fla. 5th DCA 1982); Hurt v. Leatherby Insurance Company, 380 So.2d 432, 434 (Fla. 1980); American Agronomics v. Ross, 309 So.2d at 584; Craddock v. Greenhut Construction *431 Company, 423 F.2d 111, 114 (5th Cir.1970).
Although as a general rule, "[t]he construction of a written contract is a matter of law to be determined by the court," City of Orlando v. H.L. Coble Construction Company, 282 So.2d 25, 26 (Fla. 4th DCA), cert. denied, 288 So.2d 505 (Fla. 1973), if the wording is ambiguous and the parties present different interpretations "the issue of proper interpretation can become one of fact, thus precluding summary judgment." Bunnell Medical Clinic v. Barrera, 419 So.2d at 683. (emphasis supplied).
Since St. Johns was drafter of the instruments at issue in this appeal, Multitech is entitled to the benefit of ambiguities in the disputed documents. The $120,000 damages award at issue in this case appears at paragraph 11.c of the initial agreement as an adjustment to be made in the purchase price at the closing of Parcel B, which adjustment would be given in consideration of the buyer's obligation to construct Access improvements set forth at paragraph 11.a. The default provision appears in the initial agreement at paragraph 17, which provides that in the event the buyer failed to perform its obligations under the agreement, the seller would have the right to terminate the agreement and retain the full amount of the earnest money deposit already made  "which payment shall constitute liquidated and agreed upon damages, the parties agreeing that the amount of damages would be difficult or impossible to determine and that such amount is a reasonable estimate of the damages which would result."
The first and second amendments to the contract have little or no bearing on the proper construction to be accorded the fourth (and final) amendment, and the modifications incorporated into the closing statement. Paragraph one of the third amendment recites that it supersedes all conflicting terms of the agreement and prior amendments. The paragraph eight default provisions of the third amendment provide, in part, that 
If the Buyer defaults by failing to construct the road over the Access Easement and/or the road over the Other Access Easement, the Seller shall be entitled to actual damages, but in any event, not less than $120,000.00, the amount of credit given by the Seller to the Buyer against the purchase price of Parcels A and B, as consideration for Buyer agreeing to construct the road on the Access Easement. (emphasis supplied).
At paragraph six of the third amendment the buyer warranted that road construction over the Access Easement would be completed no later than January 31, 1985, and that road construction over the Other Access Easement would be completed no later than May 31, 1985.
Paragraph one of the fourth amendment again recites that it supersedes all conflicting terms of the agreement and prior amendments. The warranties with regard to time appear in paragraph seven, and contain wording identical to that used in the third amendment. The fourth amendment default provisions appear at paragraph nine. With the exception of the insertion of the word "properly" as modifying "to construct the road," the fourth amendment default provision repeats the language of the third amendment default paragraph.
Although the language of the warranty paragraph is clear on its face, the language of the default provision in the fourth amendment contains ambiguities. The use of the expression "and/or" with reference to the first and second Access Roads is ambiguous with respect to whether it is intended to mean the buyer would be in default upon failure to build the Access Road (for which the credit was given), whether the buyer would be in default upon failure to build the Other Access Road, or whether the buyer would be in default to build the Access Road and the Other Access Road.
In addition, the use of the word "properly" for the first time in the default provision of the fourth amendment creates uncertainty regarding whether the term was intended to address the manner of construction *432 of the road[s] or whether it encompassed the manner of construction and the timeliness of construction. Driscoll's affidavit states that "manner of construction" was intended. Trekell's affidavit states it was the parties' intent that failure to construct the Access Road timely would trigger the default provisions.
The March 15, 1985, closing statement contains a modification which resolves some of this ambiguity. The relevant language from the closing statement provides:
The Seller shall have no claim against the Buyer pertaining to the Access easement and the other Access easement, provided, the Buyer completes the roadways over the said easements prior to June 30, 1985; otherwise, the Seller shall have a claim against the Buyer for the failure to complete the said roads in accordance with the agreements heretofore executed by the parties.
This language removes the ambiguity inherent in the expression "and/or" and demonstrates that completion of both Access Roads was contemplated by the parties.
It is well settled in Florida law "that a liquidated damages clause is enforceable only if the damages for breach of contract are not ascertainable at the time the contract is made." Parrish v. Dougherty, 505 So.2d 646, 649 (Fla. 1st DCA 1987). Furthermore, a liquidated damages clause will not be enforced if circumstances at the time of the breach indicate it would be unconscionable to do so. Parrish v. Dougherty, citing Berndt v. Bieberstein, 465 So.2d 1264, 1265 (Fla. 2d DCA 1985).
In Hyman v. Cohen, 73 So.2d 393 (Fla. 1954), the supreme court provided rules to determine whether a contract provision is one for liquidated damages or for a penalty. The test is (1) whether the damages were readily ascertainable at the time the contract was entered into, and (2) whether the stipulated sum is grossly disproportionate to any damages that might reasonably be expected to follow from a breach of the contract. 73 So.2d at 401. The court noted that in doubtful cases, "the tendency of the courts is to construe a provision for the payment of an arbitrary sum upon breach of contract as a provision for a penalty, rather than an agreement for liquidated damages." 73 So.2d at 402.
It is undisputed in this case that the damages consequent upon Multitech's failure to complete the road over the Access Easement were not readily ascertainable at the time of contracting. Consequently, the contract provisions vis-a-vis damages do not constitute a penalty. However, the closing statement provisions bring into play the second part of the Hyman v. Cohen test, that is, do subsequent circumstances make it unconscionable to enforce the penalty. 73 So.2d 393 (Fla. 1954).
The record reflects that only the first Access Road was completed by June 30, 1985. The second, or Other Access Road, which traverses Multitech's Phase I and Phase II developments to provide access to what was formerly St. Johns' East Property was completed and accepted by the City prior to January 31, 1986. The record also reflects that on March 28, 1985, St. Johns conveyed its East Property to Soforenko, so as of March 28, 1985, St. Johns had no demonstrable interest in access to the East Property. In addition, Mr. Gilbert of Soforenko, stated that Soforenko took into consideration the proposed Other Access Road at the time it purchased St. Johns' East Property. He further stated that he had advised Multitech's president that a June 30, 1985, completion date was not critical as Soforenko had no immediate plans to develop the property.
We find no record evidence, other than an equivocal reference in Mr. Trekell's affidavit, that St. Johns owned any lands in the vicinity other than the East Property, which property was conveyed to Soforenko on March 28, 1985. Since Mr. Gilbert's affidavit states that Soforenko considered the construction of the Other Access Road in deciding to purchase the property, it is reasonable to infer that the price St. Johns received for the property contemplated the increase in value afforded by the planned construction of the Other Access Road. Although a diminished value to Lots 15 and 16 due to delays in completion of the Access Road can be inferred, the record reflects *433 that St. Johns ratified each extension, thus, the Access Road was completed timely under the modification in the closing statement.
The record in this case reflects that St. Johns sold the property served by the Other Access Road some three months before the road was scheduled to be completed. The new owner had no immediate plans to develop the property, and expressly relieved Multitech of its obligation to complete the road by June 30, 1985. Thus, a reasonable interpretation of the subsequent circumstances could be that St. Johns suffered no damage attendant upon Multitech's failure to complete the Other Access Road within the time agreed. We conclude that in this situation, it would be inequitable to enforce the penalty against Multitech for its failure to construct a road within a time period that bore no significance to the owner of the property. Therefore, the entry of summary judgment is reversed.
With respect to point six, we cannot agree with St. Johns' assertions that any alleged inaccuracies in the final summary judgment are superficial and have no effect on the correctness of the trial court's decision. For example, Paragraph J of the summary judgment order contains two statements that are without support in the record: (1) that according to the terms of the agreement and the amendments thereto, the parties were aware the $120,000 credit was given in consideration of Multitech timely building the roads; and (2) that the parties were aware that St. Johns owned other properties, or interests therein, which would be serviced either directly or indirectly by the anticipated roads. As to the first statement, although the closing statement provides that the default provisions apply in event of failure to complete both roads, the agreement and the amendments all reflect the credit was originally given in consideration of Multitech building one road, the Access Road. As to the second statement, the record reflects that St. Johns owned the East Property, which was sold to Soforenko on March 28, 1985, and the West Property, which was serviced by the Access Road. The only other record evidence that St. Johns owned other properties in the vicinity which would be affected by failure to build the Access Road is a very general reference in the Trekell affidavit. The trial court rejected a similar general statement in the Scull affidavit, as too equivocal to constitute a material fact.
Paragraph L of the summary judgment order recites that the Trekell affidavit was uncontradicted in the record, and establishes that failure to timely complete the Other Access Road deprived St. Johns of the anticipated use of "its other lands which would have been serviced or affected by the completion of the Other Access Road." In fact, the affidavits of Driscoll and Gilbert indicate that St. Johns sold the property served by the Other Access Road well before the completion date for that road, and that the new owner of the property agreed with Multitech that a later completion date was acceptable.
Paragraph M expressly states that the recovery of $120,000 does not constitute a windfall to St. Johns; rather, it will result in making St. Johns whole in accordance with the terms of the agreement. Another reasonable view of the circumstances is that St. Johns received a $140,000 road as consideration for a $120,000 credit.
At paragraph O, the trial court states the Trekell affidavit is uncontradicted with respect to the unspecified amount of damages suffered by St. Johns. In so holding, the trial court expressly rejected the language in the Scull affidavit to the effect that the existence or non-existence of the Other Access Road had "little or no effect" on the value of lots 15 and 16. In addition, the trial court again recited that the record reflects that other properties owned by St. Johns were adversely affected. The only support for this statement is the very general assertion to that effect in the Trekell affidavit, which reference could be taken to mean Lots 15 and 16, and the Soforenko property.
Finally, a determination of the attorney's fee question in this case concerns the applicability of the procedures set forth in Florida Patient's Compensation Fund v. *434 Rowe, 472 So.2d 1145 (Fla. 1985). In Rowe, the supreme court adopted the federal lodestar approach as the appropriate method for an objective determination of an attorney's fee. In application, the lodestar process requires the trial court (1) to determine the number of hours reasonably expended on the litigation (which determination would reflect the novelty and difficulty of the question involved); (2) to determine a reasonable hourly rate for the attorney's services; (3) to determine the lodestar figure by multiplying the reasonable hourly rate by the hours reasonably expended; and (4) to adjust the lodestar figure on the basis of the contingent nature of the representation. The supreme court in Rowe concluded that "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." Rowe, 472 So.2d at 1151. With respect to enhancement by a contingency risk multiplier, the court instructed:
When the trial court determines that success was more likely than not at the outset, the multiplier should be 1.5; when the likelihood of success was approximately even at the outset, the multiplier should be 2; and, when success was unlikely at the time the case was initiated, the multiplier should be in the range of 2.5 and 3.
The "results obtained" may provide an independent basis for reducing the fee when the party prevails on a claim or claims for relief, but is unsuccessful on other unrelated claims.
Id.
In Alston v. Sundeck Products, Inc., 498 So.2d 493 (Fla. 4th DCA 1986), the court held that although a fixed fee arrangement will usually constitute the best evidence of the reasonable value of the attorney's services, "under Rowe the trial court is not absolutely bound to simply apply the agreement to determine the fee to be awarded." 498 So.2d at 495. The court concluded the statement in Rowe, to the effect that a court awarded fee should never exceed a fee agreed upon between the prevailing party and counsel, is limited to the opinion's discussion of contingency attorney's fees.[1]
The record in the instant case reflects that the agreement St. Johns had with its counsel contemplated a minimum hourly fee of $150, with an understanding that the ultimate fee would depend on the outcome of the case. The time records submitted by St. Johns' counsel indicate that 52 hours of documented time were expended on the case, and counsel included an estimate of five additional hours for matters pending at the time the affidavit was prepared.
The trial court found that 57 hours would be a reasonable determination of the time expended, and that $175 to $200 would be a reasonable hourly fee. The order on attorney's fees contains no express finding that the case involved a contingent fee agreement. Nevertheless, the trial court determined that since success appeared unlikely at the outset, the Rowe contingent fee 2.5 multiplier factor should be applied. The court further found that based on either the Rowe criteria or Disciplinary Rule 2-106, $25,000 would be a reasonable fee.
Application of the Rowe criteria to the attorney's fee order in this case demonstrates that the order is flawed in several respects. First, the attorney time is not documented with the specificity that Rowe requires. Second, the order determined an hourly fee in excess of the agreed-upon fee. Third, although the fee agreement contemplated a bonus at the conclusion of the representation, the fee awarded by the trial court includes a bonus of more than double the hourly rate St. Johns agreed to pay its counsel. Finally, the litigation was not handled on a contingency basis, so application of the Rowe enhancement multiplier would be inappropriate.
For the foregoing reasons, we reverse both the final summary judgment and the *435 attorney's fee award. We have determined that the record demonstrates not only the existence of genuine issues of material fact vis-a-vis damages, but also reflects the existence of subsequent circumstances which create a conscionability question with regard to enforcement of the penalty provision. Therefore, the award of summary judgment must be reversed. Similarly, we find the attorney's fee awarded in this case was not based upon a proper application of the Rowe criteria, and must be reversed.
Accordingly, we reverse the order awarding liquidated damages, and the order awarding attorney's fees, and remand for further proceedings consistent with this opinion.
SMITH, C.J., and WENTWORTH, J., concur.
NOTES
[1] In Alston v. Sundeck Products, Inc., the court certified the following as a question of great public importance:

IN DETERMINING THE AMOUNT OF A REASONABLE ATTORNEY'S FEE TO BE ASSESSED AGAINST A THIRD PARTY, IS THE TRIAL COURT LIMITED BY THE FEE AGREEMENT BETWEEN THE CLIENT AND HIS ATTORNEY?