873 So.2d 496 (2004)
Richard L. BRIDGHAM and Patricia A. Bridgham, Appellants,
v.
Michael J. SKRZYNSKI and Madeline M. Skrzynski, Appellees.
No. 2D03-1953.
District Court of Appeal of Florida, Second District.
May 14, 2004.
Frederick C. Kramer of Law Offices of Frederick C. Kramer, Marco Island, for Appellants.
Stephen R. Ostrow, Marco Island, for Appellees.
NORTHCUTT, Judge.
Richard and Patricia Bridgham contracted to purchase a home from Michael and Madeline Skrzynski. When the Bridghams discovered that a screen enclosure around the swimming pool violated the recorded setback restrictions of the *497 Marco Island Civic Association, they declined to complete the purchase. The Skrzynskis would not return the Bridghams' $32,000 earnest money deposit, so the Bridghams filed suit. The Skrzynskis counterclaimed, contending they were entitled to retain the deposit because the Bridghams had breached the contract. Both parties filed motions for summary judgment. The circuit court entered judgment for the Skrzynskis, concluding that, under the terms of the contract, the Bridghams had not timely objected to the setback violation. We reverse the summary judgment entered in favor of the Skrzynskis and remand for entry of summary judgment for the Bridghams.
The Skrzynskis initially accepted the Bridghams' offer to purchase the home on August 7, 2002. The contract called for a purchase price of $326,000 and was contingent on the buyers' obtaining a mortgage for $261,200. The closing date for the purchase was to be on or before October 11, 2002.
The Bridghams applied for financing. On September 5, 2002, they notified the Skrzynskis that two appraisals set the home's value at less than $300,000 and that they could not obtain a loan in the amount of $261,200. They told the Skrzynskis that unless the price was renegotiated, they would cancel the contract under the terms of the mortgage loan contingency clause. The Skrzynskis refused to negotiate a new sales price, so the Bridghams confirmed in writing that they were terminating the contract and requesting the return of their $32,000 deposit.
Several days later the parties executed a form with the preprinted title "Addendum to Sales Contract." The form contained a handwritten statement reducing the purchase price. It also provided that all other terms and conditions of the original contract were to remain the same. The Bridghams executed the addendum on September 10, 2002, and the Skrzynskis executed it on September 12.
The Bridghams then ordered a survey of the property, which disclosed the setback violation. They immediately reported the defect to the Skrzynskis. On September 30, 2002, the Skrzynskis replied that the civic association would not approve the violation. After confirming that the association would not allow the enclosure to remain in its present position, the Bridghams again cancelled the contract and requested the return of their deposit.
The Skrzynskis rejected the cancellation, asserting that "the contract clearly provides that any survey objection that is treated as a title defect under the survey provision of the contract had to be delivered by September 11, 2002." That provision, Standard M, stated that any title defects based on a survey had to be raised within the "Survey Period," which expired thirty days before the date set for the closing.[1] The circuit court agreed with this argument. When awarding summary judgment to the Skrzynskis, the court found that "the contract was a continuous *498 contract modified with the addendum signed by [the Bridghams] on September 10, 2002; therefore [the Bridghams] failed to timely raise a survey objection."
We review a summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). Moreover, the circuit court's decision was based on its interpretation of the parties' contract. Such a decision is also one of law that is subject to review under the de novo standard. See Syvrud v. Today Real Estate, Inc., 858 So.2d 1125, 1129 (Fla. 2d DCA 2003).
The evidence in this case did not support the circuit court's finding that the contract was continuous. The Bridghams' complaint averred that they "timely provided written notice terminating the contract" pursuant to the mortgage loan contingency on September 5, 2002. They also stated that the "termination was subsequently confirmed by letter of September 9, 2002." In the counterclaim, the Skrzynskis stated that "pursuant to the terms of the contract, the [Bridghams] elected to cancel said contract." Mrs. Skrzynski's affidavit in support of the motion for summary judgment also recited that the Bridghams cancelled the contract on September 5. Both parties' pleadings asserted that on September 12, 2002, they entered into the addendum, which "reinstated" the contract.
Whether this second contract is considered a new contract or a reinstatement of the old contract, its effective date was September 12, 2002, not September 10, as the circuit court found. See Rohlfing v. Tomorrow Realty & Auction Co., Inc., 528 So.2d 463, 466 (Fla. 5th DCA 1988) (noting that the ordinary real estate purchase and sale agreement is completed when the second party signs the agreement); see also Goff v. Indian Lake Estates, Inc., 178 So.2d 910, 912 (Fla. 2d DCA 1965) ("Until the terms of an agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either."). Because the parties agreed that the terms of the original contract would be incorporated into the new one, the closing date remained October 11, 2002, twenty-nine days after the second contract came into existence. Therefore, the "Survey Period" under Standard M had expired before the contract took effect. This sort of eventuality was actually contemplated in another contract provision:
STANDARD QQUICK CLOSING; CLOSING DATE EXTENSION; INSURABILITY. If the Closing Date does not allow sufficient time for performances by SELLER and BUYER within the time frames and deadlines set forth in this Contract, the parties agree to undertake and complete all performances, inspections, surveys, examinations, delivery of documents, notices, satisfaction of contingencies and all other actions required of or allowed to either party prior to the Closing Date....
Thus, Standard Q extended the time period for the buyers to obtain the survey and to raise title defects revealed by the survey until the date of closing. The Bridghams told the Skrzynskis about the setback violation at the end of September 2002, before the scheduled October 11 closing. In so doing, they complied with the contract.
The Skrzynskis, however, did not. Under Standard M, if an improvement on the property violated any recorded covenant or restriction it was treated as a title defect. Standard L of the contract gave the sellers thirty days to clear or remove a title defect after receiving notice of it from the buyers, failing which the buyers were entitled to terminate the contract. The *499 Skrzynskis never brought the screen enclosure into compliance with the association's setback requirements. Consequently, the contract required them to promptly return the Bridghams' deposit.
Under the facts of this case, the Bridghams were entitled to summary judgment as a matter of law. We reverse the summary judgment entered in favor of the Skrzynskis and remand with directions to enter judgment in favor of the Bridghams on their cross-motion for summary judgment. See, e.g., J. Allen, Inc. v. Humana of Fla., Inc., 571 So.2d 565, 566 (Fla. 2d DCA 1990); DiFranco v. Nat'l Found. Life Ins. Co., 551 So.2d 535 (Fla. 3d DCA 1989).
Reversed and remanded.
ALTENBERND, C.J., and CASANUEVA, J., Concur.
NOTES
[1] Standard MSurvey, Coastal Construction Control Line, provided, in pertinent part that BUYER may, at BUYER's expense, have the Property surveyed not later than 30 days prior to the Closing Date ("Survey Period"). If the survey, as certified by a registered Florida surveyor, correctly shows: ... (4) an improvement on the Property violates any recorded covenant or restriction, ... BUYER may, within the Survey Period, notify SELLER of the Objections and shall furnish a copy of the survey. The Objections shall be treated as title defects.... If BUYER fails to obtain a survey within the Survey Period, BUYER waives any right to object to any matters which might have been shown on a survey. If BUYER fails to make any Objections within the Survey Period, BUYER waives any Objections.