901 So.2d 297 (2005)
Robert P. SCHWARTZ, Appellant,
v.
Linda GREICO, f/k/a Linda Schwartz, Appellee.
No. 2D04-2121.
District Court of Appeal of Florida, Second District.
April 29, 2005.
*298 R.J. Haughey II and Neal A. Sivyer of Sivyer, Barlow & Watson, P.A., Tampa, for Appellant.
Walter E. Smith of Meros, Smith & Olney, P.A., St. Petersburg, for Appellee.
WALLACE, Judge.
Robert P. Schwartz (the Former Husband) and Linda Greico, f/k/a Linda Schwartz (the Former Wife), filed cross-motions in the trial court for a judgment on the pleadings determining the Former Wife's rights under a Stipulation and Property Settlement Agreement (the Settlement Agreement) to the proceeds of the sale of real property. The trial court entered judgment in favor of the Former Wife, and the Former Husband appeals. Because the provisions of the Settlement Agreement are unambiguous and the trial court correctly ruled that the Former Wife was entitled to a judgment as a matter of law, we affirm.

Facts and Procedural History
The parties were previously married to each other. Their marriage was dissolved in 1983. Prior to the dissolution of their marriage, the parties entered into the Settlement Agreement. The final judgment that dissolved the parties' marriage approved the Settlement Agreement and incorporated its provisions by reference.
When the parties entered into the Settlement Agreement, the Former Husband owned a one-half interest in real property located in Tampa. A nonparty owned the remaining one-half interest in the property. Section 14 of the Settlement Agreement sets forth the following provision concerning this real property:
14. The husband has a one-half ownership interest in real property located at the N.W. corner of Fletcher Avenue and 20th Street, Tampa, Hillsborough County, Florida, and legally described as follows:
Lot 1 and Lot 2, Block 6, W.E. HAMNER'S PINE VISTA, according to map or plat thereof recorded in Plat Book 32, Page 14, of the public records of Hillsborough County, Florida, less the So. 10 ft. thereof.
At such time as said real property is sold, the husband shall pay to the wife one-sixth of the net proceeds of the sale after deducting therefrom the costs and expenses of the sale of the property which shall first be deducted from the sales proceeds, and the payment of the then outstanding mortgage indebtedness or the assumption thereof by the new purchaser. The husband shall not further encumber the subject property until the wife has received her distributive share.
Until the sale of the subject property, the husband shall be solely responsible and pay the financial debts, assessments, and taxes associated therewith which are not otherwise required to be paid by the other title owner of said property. Upon sale, the husband shall provide to the wife all written instruments associated with the sale, including but not limited to, executed copies of contracts, appraisals, and closing statements.
Section 14 of the Settlement Agreement is the focal point of the dispute between the parties.
Approximately twenty years after the parties entered into the Settlement Agreement, the Former Husband and his co-owner sold the entire parcel described in section 14. A dispute arose concerning how much money the Former Wife was to receive from the sale of the property. The Former Wife claimed that she was entitled to one-sixth of the net proceeds of the sale *299 of the entire parcel. However, the Former Husband contended that the Former Wife was entitled to only one-sixth of the net proceeds resulting from the sale of his one-half ownership interest. The Former Husband paid the Former Wife the undisputed amount, and the disputed funds, namely $16,481.82, were placed in escrow pending a resolution of the dispute.
The Former Husband filed a complaint against the Former Wife seeking a declaratory judgment and attached a copy of the Settlement Agreement to his complaint. The Former Wife answered the complaint and moved for a judgment on the pleadings. The Former Husband also moved for a judgment on the pleadings. In their motions, both parties contended that the provisions of section 14 of the Settlement Agreement were unambiguous; both requested a judgment on the pleadings confirming their respective interpretations of section 14. The trial court entered a judgment on the pleadings determining that the Former Wife was entitled to receive one-sixth of the net sales proceeds from the sale of the entire parcel. The trial court also authorized the escrow agent to release the disputed funds to the Former Wife. The Former Husband timely filed this appeal from the judgment on the pleadings in favor of the Former Wife.

The Standard of Review
We review a trial court's decision granting a judgment on the pleadings by the de novo standard. Syvrud v. Today Real Estate, Inc., 858 So.2d 1125, 1129 (Fla. 2d DCA 2003). Moreover, the trial court's ruling was based on its interpretation of the Settlement Agreement between the parties. This is a decision of law that is reviewable de novo. See Bridgham v. Skrzynski, 873 So.2d 496, 498 (Fla. 2d DCA 2004); Syvrud, 858 So.2d at 1129.

Discussion
A trial court's decision whether to grant a motion for judgment on the pleadings must be decided solely on the pleadings without reference to outside matters. Tanglewood Mobile Sales, Inc. v. Hachem, 805 So.2d 54, 55 (Fla. 2d DCA 2001). The entry of a judgment on the pleadings is inappropriate if factual questions remain to be resolved. Id.
In this case, excluding the possibility of unresolved factual questions requires us to ascertain whether section 14 of the Settlement Agreement contains a latent ambiguity. If it does, then the trial court should have entertained parol evidence to resolve a factual dispute about the parties' intent, rendering a judgment on the pleadings improper. On the other hand, if section 14 is not ambiguous, or if the ambiguity is patent, then the trial court was not required to look beyond the pleadings (and the attached Settlement Agreement) to enter judgment as a matter of law.
Section 14 does not contain a patent ambiguity. "[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." Crown Mgmt. Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984). Extrinsic or parol evidence is inadmissible if the ambiguity is patent. Id. Here, the language of the instrumentincluding the phrase, "[a]t such time as said real property is sold, the husband shall pay to the wife one-sixth of the net proceeds of the sale"is not defective, obscure, or insensible.
"A latent ambiguity, on the other hand, is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings." *300 Id. Thus the latent ambiguity, which was not apparent at the time the contract was created, is revealed by the "certain situation" that occurs during the performance of the contract. For example, in Cartan Tours, Inc. v. ESA Services, Inc., 833 So.2d 873 (Fla. 4th DCA 2003), the issue was whether a purveyor of packaged tours was entitled to repayment for the license of hotel rooms during the Salt Lake City Olympics. The contract called for such repayment in the event of acts "affecting the ability of the Olympic Games to be held." Id. at 874. The latent ambiguity was revealed only when acts of terrorism created doubt as to whether the phrase meant preventing the games altogether or merely affecting the ability of the games to be held in the manner contemplated by the parties. See id. at 875. Because the ambiguity required the court to look beyond the pleadings to interpret the contract, judgment on the pleadings was improper. Id.
On appeal, the Former Husband contends that section 14 is ambiguous as to whether it requires him to pay one-sixth of the proceeds from the sale of his one-half interest in the parcel or whether it requires him to pay one-sixth of the entire sales proceeds. He poses hypothetical examples illustrating how the nonparty co-owner, by either increasing or paying down the indebtedness on his fractional interest in the parcel, could alter both the Former Husband's and the Former Wife's rights and obligations under the Settlement Agreement. However, the pleadings do not state that any of these hypothetical examples have occurred. Rather, the Former Husband's complaint simply alleges: "The property at issue has been sold." This fact is not disputed. The contract states: "At such time as said real property is sold, the husband shall pay to the wife one-sixth of the net proceeds of the sale...." The Former Husband's obligation as required by section 14 is plain. The pleadings do not indicate any circumstances that would cast doubt on the Former Husband's obligation. See Critchlow v. WFC Mortgage Co., 315 So.2d 483, 484 (Fla. 3d DCA 1975) ("The trial court may consider undisputed facts appearing in all the pleadings in determining the propriety of a motion for a judgment on the pleadings.").
Further, the contract does not contain the sort of contradictory language that could lead to a latent ambiguity. Cf. Crown Mgmt., 452 So.2d at 51-52 (finding latent ambiguity in a contract that determined payments due according to both a percentage increase in the Consumer Price Index and a point increase in the Consumer Price Index). Nor does section 14 contain an undefined term controlling a party's obligation. Cf. Tanglewood Mobile Sales, Inc., 805 So.2d at 56 (holding that judgment on the pleadings was improper when the contract did not define the term "cost," which may or may not have included the cost of improvements to the property). Here, the Former Husband attempts to raise extrinsic hypothetical issues in order to create ambiguity in an otherwise explicit contract, not to resolve an existing ambiguity.
We have not overlooked the Former Husband's argument based on the provision of section 14 that "[t]he husband shall not further encumber the subject property until the wife has received her distributive share." The Former Husband argues that the "subject property" could only refer to his one-half interest in the property because it would be impossible for him to encumber the co-owner's interest. The Former Husband points out that the meaning of "subject property" conflicts with "said real property" in the phrase, "[a]t such time as said real property is sold, the husband shall pay to the wife one-sixth *301 sixth of the net proceeds of the sale," which ostensibly refers to the entire parcel. Therefore, according to the Former Husband, there is an ambiguity as to whether "net proceeds of the sale" refers to the sale of the "subject property" (the Former Husband's one-half interest) or to the sale of the "said real property" (the entire parcel).
The Former Husband's argument fails because the sale of the property and his hypothetical encumbrance of the property before the sale are two separate events. Although the Former Husband's duties before the sale are inartfully described in section 14, his duties upon the sale of the property are certain. The phrase "net proceeds of the sale" can only refer to "[a]t such time as said real property is sold," which in turn can only refer to the entire parcel described immediately preceding. Any other reading would be tortured. Accordingly, we affirm the trial court's judgment.
Affirmed.
SILBERMAN and VILLANTI, JJ., Concur.