532 So.2d 1358 (1988)
Gerald F. GRIFFIN, Sr., Betty S. Griffin, Patrick J. Griffin, Gerald F. Griffin, II, Glenn G. Griffin, and Surrey Wayne Corporation of Florida, Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.
Nos. 87-3413, 88-86.
District Court of Appeal of Florida, Second District.
November 4, 1988.
John W. Emerson, of Emerson and Emerson, P.A., Naples, for appellants.
Julia Sullivan Waters, of Holland & Knight, Tampa, for appellee.
LEHAN, Judge.
This is an appeal from a final summary judgment in this suit on a promissory note and for foreclosure of the mortgage which secured the note. We reverse the summary judgment of foreclosure because an issue of material fact remains unresolved.
The $3,100,000 note was owed to Park Bank of Florida and was secured by a mortgage given by Wiggins Pass Club, *1359 Inc., on certain property (the Mainland Parcel) owned by Wiggins Pass. After default on the note, Park Bank filed this suit. Subsequently, Park Bank was determined to be insolvent, and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. The FDIC in its corporate capacity purchased various assets of the bank, including the note and mortgage which are the subjects of this suit. Upon motion, the FDIC was substituted as the plaintiff.
Appellants, guarantors on the note, raised various defenses. One defense was that the rate of interest on the loan was usurious. The FDIC responded that there was no usury and that, even if there was, the FDIC is not subject to state usury laws. Another defense was that, pursuant to certain agreements signed by various parties, including Park Bank, the Mainland Parcel should have been released from the mortgage. The FDIC responded that the agreements did not require such release.
The trial court granted the FDIC's motion for summary judgment, implicitly ruled adverse to appellants on their defenses, and entered the final summary judgment foreclosing the mortgage.
The two principal contentions raised on appeal are (1) that the loan was usurious and the FDIC is subject to the defense of usury and (2) that the question of whether the Mainland Parcel should have been released from the mortgage was not properly decided by the summary judgment.
As to contention (1), we agree with the trial court that the FDIC is not subject to the Florida usury laws in this case. When the FDIC in its corporate capacity as a part of a purchase and assumption transaction, as here, acquires a note in good faith, for value, and without actual knowledge of a usury defense against the note, the FDIC takes the note free of that defense. FDIC v. Leach, 772 F.2d 1262 (6th Cir.1985); FDIC v. Wood, 758 F.2d 156 (6th Cir.1985). See Charter Executive Center, Ltd. v. FDIC, 34 Bkrtcy. 131 (M.D. Fla. 1983); FDIC v. Tito Castro Constr. Inc., 548 F. Supp. 1224 (D.P.R. 1982). But see FDIC v. Rivera-Arroyo, 645 F. Supp. 511 (D.P.R. 1986). To establish that defense the element of actual knowledge of the FDIC must be shown as of the date the FDIC entered into the purchase and assumption agreement, and the FDIC cannot be charged with such knowledge merely because information indicating the defense could be found in the bank's files. Wood, 758 F.2d at 162.
In this case we understand appellants to contend only that information indicating their usury defense could have been found by the FDIC in the bank's files, not that the FDIC had actual knowledge of such a defense. Nor do we understand appellants to dispute that the FDIC acquired the note in good faith and for value.
As to contention (2), the argument that upon summary judgment the Mainland Parcel was improperly found not to have been released from the mortgage is based upon a document entitled "Agreement to Release Mortgage" which was executed by various parties, including Park Bank and one of the appellants. That agreement refers to a separate option agreement which provided that FMI Financial Corporation (not a party to this appeal) had the option to purchase all of the stock in Wiggins Pass, or the option to purchase the Mainland Parcel itself, or the option to do both. The option agreement provided that the option price for the purchase of the stock would be $100 and that the option price for the purchase of the Mainland Parcel would be $3,040,000. The release agreement provided that upon FMI's exercise of its option(s) under the option agreement, FMI would pay the option price directly to Park Bank and that, upon payment of the option price, Park Bank would release the mortgage on the Mainland Parcel.
Subsequent to the institution of this foreclosure action, FMI exercised its option to purchase the stock of Wiggins Pass. Appellants contend that the language of the release agreement requires that, since FMI exercised that option and paid the option price, the Mainland Parcel should be released from the mortgage and should not be subject to the foreclosure action or at least that parol evidence should be permitted to show that that was the intent of the *1360 release agreement. The FDIC responds that if all documents involved in this transaction are read and construed together, the only logical interpretation is that the parties intended for the Mainland Parcel to be released from the $3,100,000 mortgage only upon FMI's exercise of its option to purchase the Mainland Parcel and its payment of the $3,040,000 option price and not upon FMI's exercise of the option to purchase the stock and its payment of the $100 option price.
We conclude that an ambiguity must be found to exist as to what the parties intended in this regard. The release agreement provides that the Mainland Parcel would be released from the mortgage upon payment of the option price, but the release agreement does not define the term "option price." For a definition of that term reference must be made to the separate option agreement. But, as we have noted, the option agreement contains two different definitions of that term  $100 and $3,040,000. The ambiguity in the release agreement is a so-called latent ambiguity which exists "where the language in a contract is clear and intelligible and suggests a single meaning, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two possible meanings." Bunnell Medical Clinic v. Barrera, 419 So.2d 681, 683 (Fla. 5th DCA 1982). See also Crown Management Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984).
When an agreement contains a latent ambiguity, as here, parol evidence is admissible to determine the intent of the parties. Crown; Bunnell. Under these circumstances the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment. Bunnell; Griffin Builders Supply, Inc. v. Jones, 384 So.2d 265 (Fla. 2d DCA 1980); Snyder v. Cheezem Development Corp., 373 So.2d 719 (Fla. 2d DCA 1979).
Accordingly, the final judgment must be reversed and the cause remanded for the consideration of any parol evidence as to whether the parties intended the Mainland Parcel to be released from the mortgage upon payment of the $100 option price. We do not disagree with the FDIC's argument that it does not appear to be a reasonable interpretation that the parties intended to release a mortgage securing a $3,100,000 loan upon payment of $100. And we recognize that in construing a contract "the court must consider the objects to be accomplished, and to this end should place itself in the position of the parties when the contract was entered into" and "should arrive at an interpretation consistent with reason, probability, and the practical aspect of the transaction between the parties." Bay Management, Inc. v. Beau Monde, Inc., 366 So.2d 788, 791 (Fla. 2d DCA 1978). Thus, upon remand and absent parol evidence which the trial court determines establishes otherwise, the trial court may again, solely on the basis of the documents, resolve the release issue adverse to appellants.
Our disposition of this case renders moot the other issues raised by appellants.
Reversed and remanded for proceedings consistent herewith.
RYDER, A.C.J., and DANAHY, J., concur.