604 So.2d 888 (1992)
HOLLYWOOD CORPORATE CIRCLE ASSOCIATES, a Florida General Partnership, Appellant,
v.
Charles AMATO, JR., and Cuyhoga Wrecking Corp., etc., Appellees.
No. 90-3302.
District Court of Appeal of Florida, Fourth District.
September 2, 1992.
*889 Richard A. Sherman and Rosemary Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, for appellant.
Bruce L. Hollander of Hollander & Associates, P.A., Hollywood, for appellee-Charles Amato, Jr.
ALDERMAN, JAMES E., Senior Justice.
Appellant-defendant, Hollywood Corporate Circle Associates (H.C.C.A.), the defendant in the trial, appeals a final judgment for personal injuries awarded in a jury trial to the appellee-plaintiff, Charles Amato. We reverse and remand for a new trial.
Plaintiff's cause of action is grounded upon the rule set out in section 367, Restatement of Torts, as adopted by the Second District Court of Appeal in Drady v. Hillsborough County Aviation Authority, 193 So.2d 201, 203 (Fla. 2d DCA 1967):
A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.
H.C.C.A. was the owner of a large circular parcel of land located in the middle of Hollywood Boulevard known as Military Circle. This land causes the two-way vehicular traffic proceeding on Hollywood Boulevard to divert to the north when going westerly and to the south when going easterly, creating one way traffic around Military Circle. For many years, a military academy had occupied the land. The buildings of the academy prevented drivers on Hollywood Boulevard approaching Military Circle from seeing beyond the parcel of land to Hollywood Boulevard on the other side of the circle. As part of the defendant's development plan for a high rise office building, Cuyahoga Wrecking Corp. was hired to level the existing buildings and to remove the rubble.
Once the buildings and rubble were removed, drivers approaching Military Circle at night could see the street lights and head lights of oncoming cars on the other side of the circle, creating the illusion that Hollywood Boulevard continued straight through Military Circle.
H.C.C.A. and Cuyahoga Wrecking Corp. used the east side of the circle to gain access to the property. Although a fence surrounded the property, there was a large gate where westerly bound traffic on Hollywood Boulevard turned right and proceeded around Military Circle.
The plaintiff had been drinking at the time of the accident and at trial he stipulated that he was legally drunk. He testified that he never saw any of the numerous directional markings on the highway indicating that he was approaching Military Circle and that Hollywood Boulevard turned right to go around Military Circle. He drove straight through the gate onto defendant's property and crashed into a bulldozer.
The plaintiff claimed that the defendant was negligent in failing to warn him that the construction site was not a public highway and that it was blocked by a bulldozer.
Plaintiff testified that on October 22, 1984, after having at least three drinks at a nude dancing bar he gave a dancer from this bar a ride to her home. Upon arriving, she asked him in for a drink. While inside, and after he had at least two more drinks, she began to have an asthma attack. Plaintiff, offered to drive her to the hospital. Although he was aware of Military Circle on Hollywood Boulevard near the hospital, he did not recognize the circle when he came to it. He testified in part as follows:
Well, I was looking for what I normally would have been seeing from the other times I had traveled that area: the school, which is a landmark, and I believe a lot of people drive by that.
.....
And I am looking for the school and, you know, there is no school there. And I'm driving and I am going west there, and all of a sudden, you know, I mean, I *890 see an area that's dark. Everything got very dark in front of me.
.....
Why? Because I had run out of road, and that was the circle, only it looked like you can drive straight through from back there. And when I got to about where the gate was, I stepped on the brakes.
.....
And as I stepped on the brakes and looked in front of me, there was a large object, and my car is skidding out of control, and I am trying to stop before I hit this thing. And the next thing I knew, I heard the sound of the impact and the glass splatter and felt myself holding on the wheel as tight as I could.
Plaintiff admitted that shortly after the accident he gave a false version of what occurred to an insurance adjuster. He told the adjuster that the woman fell over on him and hit the steering wheel, causing his foot to hit the gas and the car to drive into the circle. He claimed at trial that he told this version because he was scared and wanted the adjuster to believe the woman was at fault.
Plaintiff also initially told the investigating police in the emergency room that it was the woman, and not he, who was driving at the time of the accident. He recanted this story when the police confronted him with evidence that showed his chest wounds were caused by the steering wheel.
After the jury had deliberated for five hours, the jury foreperson indicated that they were unable to unanimously agree because "one dissenting member is immoveable." Over the defendant's objection, and motion for mistrial, the trial court instructed the jury as follows:
I guess it's now five full days on the trial of this case. An awful lot of money has been spent, a lot of people have been put out of their normal planned functions, and required to come here against their will, but they did it because it was a process we have unique to the United States, or at least to the English speaking people. We all want a verdict, defendant wants a verdict, the court wants a verdict, and I want to read this instruction to you and give you one more chance to go back in the jury room.
The judge then gave an Allen[1] charge and advised the jury that if it could not reach a conclusion in a reasonable time he would declare a mistrial. The judge then said, "and it is going to be terrible [sic] expensive to everybody."
After about 45 minutes, the jury returned its first verdict, but the judge sent the jury back to recalculate the arithmetic. A second verdict found plaintiff 75% negligent, defendant 25% negligent and assessed total damages of $219,000. But juror Saunders, upon a poll of the jurors, replied that this was not his verdict, as he did not agree with the percentages of fault.
Over defendant's objections, the judge again sent the jury back in "to agree on the percentage" only. He informed the jury not to change any figures on the verdict form. Defendant again moved for a mistrial.
The jury's third verdict assessed 72% liability to plaintiff and 28% to defendant. But, upon a jury poll, juror Saunders, again, said this was not his verdict.
Verdict four allocated 65% fault to plaintiff and 35% to defendant. This verdict was unanimous.
Prior to arriving at its final verdict, the jury foreperson told the judge "there is a possibility that there are some influential factors entering into his (juror Saunders') refusal to compromise." The nature of these influences were disclosed after the unanimous verdict was entered. The questioned conduct is summarized in an affidavit given by one of the jurors:
Juror, Jack Saunders, told other jurors that he had spoken to his girlfriend, a Hollywood police officer, about the credentials of Amato's expert witness, Rick *891 Swope; during the trial, Saunders told other jurors that he would be attending the police academy next month and that Plaintiff's expert witness, Rick Swope, would be one of his instructors; during the trial, Saunders told other jurors that he looked forward to being in Mr. Swope's class. During the trial, Saunders told other jurors that he had researched Florida law and that there was a Florida Statute that says if someone has heavy construction equipment, they must have a fence around the property. During the trial, Jack Saunders brought a Police Regulations Handbook into the jury room; on Wednesday of the trial week, Saunders told other jurors that he had driven by the scene of the accident the previous day, during the trial; and Saunders told other jurors that he was once stopped by a Hollywood police officer and "blew" a 2.1 on a breathalyzer but since the officer was a friend, he was allowed to drive the last few blocks to his home.
There are several errors in this case that require reversal. To begin with the trial court should have granted defendant's motion for a new trial once it became clear that Juror Saunders had independently researched Florida law, relayed his opinion to other jurors, visited the accident scene, discussed the case with his girlfriend, relayed her personal knowledge to other jurors, and carried a Police Regulations Handbook into the jury room. These violations demonstrate a willful disregard for the sanctity of the jury process. In Grissinger v. Griffin, 186 So.2d 58 (Fla. 4th DCA 1966) this court held the mere taking of a dictionary into the jury room, although there was no evidence it was used, constituted reversible error. In the present case the harmful effect of juror Saunders' misconduct is apparent and mandates a new trial.
The ad lib comments of the trial court given in conjunction with the Allen charge also constitute reversible error. Among other things, the trial court improperly informed the jury that if they did not arrive at a unanimous verdict, it was going to be "terrible [sic] expensive to everybody." Such comments are not tolerated. See Rodriquez v. State, 462 So.2d 1175 (Fla. 3d DCA), review denied, 471 So.2d 44 (Fla. 1985) (charge telling jurors to consider expense and indicating a verdict was desired held fundamental error).
The court also erred when it instructed the jury to go back and agree only upon percentage allocations for fault, and by informing the jury not to reconsider the total amount of damages. Stevens Markets, Inc. v. Markantonatos, 189 So.2d 624 (Fla. 1966) (jury to which verdict is returned for correction may alter verdict in substances or submit entirely different one.) See also, McDonough Power Equipment, Inc. v. Brown, 443 So.2d 1050 (Fla. 4th DCA), review denied, 453 So.2d 44 (Fla. 1984) (error for trial court to resubmit, after first verdict, only the issue of compensatory damages, though cured by resubmitting all issues after a second verdict).
In addition to the foregoing, defendant contends that the court erred in failing to grant its motion for a directed verdict. It argues that the plaintiff failed to prove that any breach of duty on its part proximately caused plaintiff's injury. From the evidence the jury might have found that there was no fault on the part of the defendant and that the plaintiff's injuries were solely the result of his own negligence. But the jury also might have found that the defendant so maintained its property that it knew or should have known that others would reasonably believe the property to be a public highway and that defendant's act of creating the optical illusion of a through street and its failure to do anything on its property to warn of the illusion was a contributing factor to the accident. That being the case, the motion for directed verdict was properly denied.
REVERSED and REMANDED for a new trial.
DELL and GUNTHER, JJ., concur.
NOTES
[1] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1986). Fla.Std. Jury Instr. (Civ.) 3.06 (1981).