885 So.2d 397 (2004)
Scotty Lamar POE, individually, and Jessica Diane Poe, his wife; and Scotty Lamar Poe and Jessica Diane Poe, as the natural parents and next friends of Nicholas Scott Poe, Megan Diane Poe, and Jordan David Poe, minor children, Appellants,
v.
IMC PHOSPHATES MP, INC., a Florida corporation; Hillsborough County, a municipal corporation; and Brainard Hunting Harris, Appellees.
No. 2D03-4405.
District Court of Appeal of Florida, Second District.
October 15, 2004.
*398 Paul B. Catania and Paul S. Reed of Catania & Catania, P.A., Tampa, for Appellants.
Richard R. Garland of Dickinson & Gibbons, P.A., Sarasota, for Appellee IMC Phosphates MP, Inc.
No appearance for Appellees Hillsborough County and Brainard Hunting Harris.
WALLACE, Judge.
This is a premises liability case. Scotty Lamar Poe and Jessica Diane Poe, his wife, individually and on behalf of their minor children, challenge a final summary judgment that dismissed their personal injury action against IMC Phosphates MP, Inc. (IMC). Mr. Poe drove his vehicle at night from the public highway onto an abandoned entrance to an old phosphate mine owned by IMC, where Mr. Poe's vehicle crashed into a large metal pipe that IMC had positioned about twenty feet inside the entrance to its property as a barrier to vehicles. Upon a review of the record, we conclude that IMC failed to meet its burden on summary judgment of showing the absence of any genuine issue of material fact and that it was entitled to judgment as a matter of law. Accordingly, we reverse the summary judgment, and we remand this case to the circuit court for further proceedings.

THE FACTS
The accident occurred in a rural area of southeastern Hillsborough County.[1] On *399 the night of August 27, 1999, Mr. Poe, who had limited experience driving in the area, was traveling east on Welcome Road toward Keysville Road East, where he intended to turn. Welcome ends at Keysville, forming a "T" intersection. IMC's property lies east of Keysville, directly across from the intersection with Welcome. A stop sign at the corner of Welcome and Keysville controlled the traffic traveling east on Welcome, which is required to turn at Keysville. The intersection was not illuminated, nor was the entrance to IMC's property. Deposition testimony in the record was in sharp conflict as to whether, at the time of the accident, the stop sign was in its intended position or was bent out of place so that it would not be clearly visible to a driver approaching Keysville on Welcome. Deposition testimony from some area residents also indicated that displacement of the sign was not an unusual occurrence. One local resident testified that he had just reinserted the sign the day before the accident, but the morning after the accident, it was again out of position.[2]
IMC's property had a paved driveway providing an apparent entrance to the property from Keysville. The entrance, which was not illuminated, had the appearance of a continuation of Welcome. The paved portion of the entrance was formerly part of a road that extended into IMC's property, and motorists continued to use the paved portion of the entrance as a turnaround. However, about twenty feet back from the eastern edge of Keysville, a large pipe barrier lay horizontally across the entrance at a point where the pavement ended and where the area turned into a grassy pass. IMC had placed the pipe across the entrance to block access to all-terrain vehicles. Riders on such vehicles occasionally used IMC's old phosphate mine to ride for recreational purposes. The pipe was a rusty brown color and was neither reflective nor painted a bright color so as to be visible at night. Welcome slopes downward approaching Keysville, leveling at Keysville. Because of Welcome's slope  according to a long-time area resident-the lights of a vehicle on Welcome approaching Keysville at night would not illuminate Keysville or the pipe on IMC's property until the vehicle reached the intersection of Keysville and Welcome. There was no sign or other warning at the entrance to IMC's property of the large pipe just beyond the entrance.
Without stopping at Keysville, Mr. Poe drove through the "T" intersection onto the pavement at the entrance to IMC's property and collided head-on with the pipe. The force of the collision caused serious physical injuries to Mr. Poe and to his three young children who accompanied him in the vehicle. Mr. Poe testified at his deposition that he did not see a stop sign at Welcome and Keysville and that he thought the pavement on IMC's property to the east of Keysville was a continuation of Welcome. Mr. Poe testified further that he did not see a sign restricting access to IMC's property and did not see the pipe at the end of the paved portion of IMC's property.
In opposition to IMC's motion for summary judgment, Mr. and Mrs. Poe submitted the affidavit of an expert witness, Denny V. Kunak, who held a Doctorate of Science degree in human factors engineering and a Ph.D. in management. Dr. Kunak visited the accident site and reviewed the deposition testimony, the accident reports, *400 a videotape, and photographs of the scene. Dr. Kunak opined, in substance, that the design of IMC's entrance  coupled with the use of a nonreflective "heavy and unforgiving industrial pipe" as a vehicle stop  contributed significantly to the accident and failed to minimize possible collision damage. Dr. Kunak also observed that IMC could have achieved its purpose by using a different type of fencing together with the easily visible lightweight barricades used in road construction projects and a sign with the words "Road Closed."

THE CIRCUIT COURT PROCEEDINGS
In the circuit court, the parties focused their arguments on whether Mr. Poe was an invitee, a licensee, or a trespasser on IMC's property and on the resulting duty of care owed by IMC to Mr. Poe.[3] IMC argued that Mr. Poe was a trespasser on its property, not an invitee. On appeal, IMC argues that Mr. Poe was either a trespasser or, at best, an uninvited licensee. Thus IMC's duty to Mr. Poe was only "to avoid willful and wanton harm to him, and to warn him of a defect or condition known by the landowner to be dangerous when such danger is not open to ordinary observation by the licensee or trespasser." Morris v. Florentes, Inc., 421 So.2d 582, 583 (Fla. 5th DCA 1982). According to IMC, the large pipe was open and obvious to motorists, and it was not foreseeable that Mr. Poe would drive past the stop sign at Welcome, cross Keysville onto IMC's paved road segment, and crash into the pipe. IMC contended that it had not breached any duty that it may have owed to Mr. Poe.
On the other hand, Mr. and Mrs. Poe argued that Mr. Poe was on IMC's property by an implied invitation to enter because IMC's paved road at the top of the "T" intersection appeared to be a continuation of Welcome. If Mr. Poe was an invitee on IMC's property, as Mr. and Mrs. Poe contended, then IMC owed him a duty to keep the property reasonably safe and to protect him from dangers of which IMC was, or should have been, aware. Post v. Lunney, 261 So.2d 146, 147 (Fla.1972). In the alternative, Mr. and Mrs. Poe argued that even if Mr. Poe was an uninvited licensee or a trespasser as IMC contended, the placement of an unmarked, nonreflective rigid pipe at the end of IMC's pavement that appeared to be a continuation of Welcome constituted willful and wanton misconduct. The circuit court entered final summary judgment in favor of IMC.

THE STANDARD OF REVIEW
Review of a summary judgment is de novo, requiring a two-pronged analysis. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). First, a summary judgment is proper only if there is no genuine issue of material fact, viewing every possible inference in favor of the party against whom summary judgment has been entered. Huntington Nat'l Bank v. Merrill Lynch Credit Corp., 779 So.2d 396, 398 (Fla. 2d DCA 2000). Second, if there is no genuine issue of material fact, a summary judgment *401 is proper only if the moving party is entitled to a judgment as a matter of law. Aberdeen at Ormond Beach, 760 So.2d at 130. The presumption of correctness generally applicable to all orders subject to appellate review is relatively weak in review of a summary judgment because the appellate court is in no less of a position than the trial court in reviewing documentary evidence. Hervey v. Alfonso, 650 So.2d 644, 646 (Fla. 2d DCA 1995); Savage-Hawk v. Premier Outdoor Prods., Inc., 474 So.2d 1242, 1244 (Fla. 2d DCA 1985). In reviewing the summary final judgment entered in this premises liability case, we are mindful that the issue of whether a negligent condition exists on premises generally involves a disputed issue of material fact which precludes summary judgment. Cold Storage Cafe, Inc. v. Barone, 779 So.2d 371, 373 (Fla. 2d DCA 2000).

ANALYSIS
Genuine issues of fact in the record give rise to two distinct legal theories of IMC's liability, thus precluding summary judgment in its favor.

A. Misleading Private Way

Courts from numerous jurisdictions have held that a traveler who enters private land that appears to be a continuation of the public highway becomes an implied invitee. Under such circumstances, the owner of the land may be held liable for injuries sustained by the traveler resulting from the property owner's failure to exercise due care to keep the property in a reasonably safe condition for travel. For example, in Beckwith v. Somerset Theatres, Inc., 139 Me. 65, 27 A.2d 596 (1942), the Supreme Judicial Court of Maine reversed a directed verdict for the defendant property owner on facts very similar to those in this case. In Somerset Theatres, the plaintiff motorist drove at night over pavement on private property made of the same surface as the public street, thinking that it was a continuation of the public street. The motorist was injured when her vehicle struck a large concrete block located on the paved portion of the private land. The Maine court reversed the directed verdict for the defendant property owner in part because there were issues of fact concerning whether the motorist was on the property by implied invitation on account of the property's resemblance to the public road and whether the owner kept the property in a reasonably safe condition for travel. Id. at 598. The court explained:
If a person so surfaces and maintains his land abutting on a public highway as to indicate to the traveling public that such land is included in and is a part of such highway, with no sufficient warning to the contrary, he impliedly invites or allures travelers lawfully on the highway to drive over that land as if it were a part of such highway, provided such travelers did not know that the land was private property. In such circumstances, the travelers would not be trespassers on the land, but invitees, to whom the land owner owes the duty of keeping it in a reasonably safe condition for such travel.
Id.; see also Aluminum Co. of Am. v. Walden, 230 Ark. 337, 322 S.W.2d 696 (1959); Mercier v. Naugatuck Fuel Co., 139 Conn. 521, 95 A.2d 263 (1953); Williamson v. S. Ry. Co., 42 Ga.App. 9, 155 S.E. 113 (1930); Reddington v. Getchell, 40 R.I. 463, 101 A. 123 (1917). Although the facts of the case are not stated in the opinion, this court cited to the Somerset Theatres decision with approval almost fifty years ago in Atlantic Coast Line Railroad Co. v. Corsel, 99 So.2d 305 (Fla. 2d DCA 1957).
*402 The classification of the traveler as an "implied invitee" in cases such as Somerset Theatres is a transparent legal fiction. Dean Prosser explains that "[i]t is often said in such cases that there is an implied `invitation' to enter, but the true basis of liability seems to be the misrepresentation of the character of the property." W. Page Keeton, Prosser and Keeton on Torts § 57 (5th ed.1984). Under the implied invitee approach to the misleading private way problem, the cause of Mr. Poe's entry onto IMC's property determines Mr. Poe's status either as an invitee or as an uninvited licensee or a trespasser and, therefore, the extent of IMC's responsibility. This question involves issues of material fact not subject to determination on summary judgment. "The status of the person on the premises of another is generally a question of fact." Lukancich v. City of Tampa, 583 So.2d 1070, 1072 (Fla. 2d DCA 1991). Assuming Mr. Poe was an implied invitee on IMC's property, additional questions of fact arise concerning whether IMC kept its property in a reasonably safe condition for travel.
The legal fiction of implying an "invitation" to enter employed in Somerset Theatres and similar cases turns a blind eye to the reality that the traveler in these cases has no intention of going on the property owner's land and enters because he misapprehends the true state of affairs and believes that the private way is a continuation of the public road. The modern approach to these cases  which is more responsive to the facts  focuses on what caused the traveler to leave the public road and come into contact with the condition causing the injury and whether the property owner breached a duty to the traveler that contributed to that result. The Restatement (Second) of Torts, section 367 (1965), adopts such an analysis as follows:
A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.
Pursuant to section 367, the familiar tripartite classification of visitors to land owned by others as invitees, licensees, and trespassers is irrelevant. Instead, "liability depend[s] upon the fact that the [traveler] reasonably believes that the land is a highway, being misled by the actor's conduct into such belief." Id. (Special Note, which is also applicable to sections 368, and 369).
This court approved section 367 of the Restatement in Drady v. Hillsborough County Aviation Authority, 193 So.2d 201 (Fla. 2d DCA 1966).[4] In Drady, a motorist traveling at night struck a concrete abutment on the defendant's property. The motorist claimed that he was misled by road conditions on and off the defendant's property into believing that the public road continued into that property. In a decision reversing the dismissal of the motorist's complaint with prejudice, this court described the duty of an adjacent property *403 owner to travelers on a public highway as follows: "The adjacent property owner ... has the duty to maintain its property in a reasonably safe condition for travel after it knows or should know that others will reasonably believe it to be a public highway." Id. at 204-05. The Third and Fourth Districts have also approved the rule stated in section 367. See Hollywood Corporate Circle Assocs. v. Amato, 604 So.2d 888 (Fla. 4th DCA 1992); Felton v. W. Gables Homes, Inc., 484 So.2d 639 (Fla. 3d DCA 1986).
Pursuant to the analysis in section 367 and this court's decision in Drady, there were several genuine issues of material fact raised by the record. Initially, there was a question whether IMC knew or should have known that motorists such as Mr. Poe would reasonably believe that the entrance to its property was a continuation of the public highway. If so, additional questions arose concerning whether IMC had failed to exercise reasonable care to maintain the entrance to its property in a reasonably safe condition for travel and whether any such failure was a proximate cause of Mr. Poe's collision with the large pipe.

B. Dangerous Condition Near an Existing Highway

In addition to the misleading private way theory, the facts in this case pose a separate but related question concerning whether IMC's placement of the pipe at the end of the paved entrance to its property created a condition dangerous to persons in the vicinity traveling on Keysville or Welcome. We may assume, without deciding, that Mr. Poe was, as IMC contended, an uninvited licensee or a trespasser on its property. Even under this assumption, issues of fact precluded the entry of summary judgment. IMC knew that unauthorized persons used the abandoned entrance on Keysville to gain vehicular access to its property. Thus IMC's knowledge of the presence of such unauthorized persons on its property was undisputed. There is an issue of fact concerning whether the placement of the large, nonreflective rigid pipe at the end of the paved entrance to IMC's property created a hidden danger at night. There are also questions of fact concerning whether there was any adequate signage or other indication at the paved entrance on Keysville that Mr. Poe was entering IMC's private property and not driving on a continuation of the public highway. See Brien v. Fla. Dep't of Transp., 538 So.2d 526 (Fla. 4th DCA 1989) (reversing summary judgment for property owner because a genuine issue of material fact existed as to whether a roadway under construction with a sudden drop-off was a hidden danger at night for which warning was required to teenage trespassers who skated on the road; a second factual issue existed as to whether their presence should have been known to the owner). We also conclude that there are issues of fact in this case concerning whether the use of a large, nonreflective rigid pipe as a barrier to trespassers riding recreational vehicles, positioned at the end of a paved road that could be perceived as a continuation of the public road, could constitute the wanton and willful disregard of the safety of even a trespassing motorist. See Dyals v. Hodges, 659 So.2d 482 (Fla. 1st DCA 1995) (holding that issues of material fact precluded determination on summary judgment of the question of whether a property owner who placed stumps of wood inside his property, near a fence bounding his property through which several motorists had previously crashed and left the scene, acted with willful and wanton disregard for the safety of others).
Once, again, the Restatement provides a more modern approach to the problem. Section 368 of the Restatement (Second) of *404 Torts addresses the issue of the liability of possessors of land for conditions dangerous to travelers on an adjacent highway.[5] Section 368 provides:
A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
(a) are traveling on the highway, or
(b) foreseeably deviate from it in the ordinary course of travel.
In cases where section 368 applies, there are generally questions of fact concerning: (1) whether the excavation or other artificial condition on the property in fact involved an unreasonable risk of harm to others; (2) whether the owner realized or should have realized that an excavation or other artificial condition on his property involved an unreasonable risk to others; (3) whether the person or persons sustaining injury were traveling with reasonable care upon the highway; and (4) whether it was foreseeable that the person or persons injured might deviate from the highway in the ordinary course of travel and come into contact with the excavation or other artificial condition. Citing section 368, courts in other jurisdictions have found issues of fact precluding summary judgment or a directed verdict in favor of owners of property adjacent to a public road where a vehicle left the highway and encountered objects on the property that caused injury or death to the occupants of the vehicle. See Ousley v. Bd. of Comm'rs, 734 N.E.2d 290 (Ind.Ct.App.2000) (reversing summary judgment for property owner and remanding for trial because material issues of fact existed concerning whether it was foreseeable that motorists would leave paved highway and strike a fence post six feet from the road and whether there was an unreasonable risk to motorists who reasonably deviated from the highway because the fence post was much stronger than it needed to be); Military Highway Water Supply Corp. v. Morin, 114 S.W.3d 728 (Tex.Ct.App.2003) (holding that defendant property owner was not entitled to a directed verdict with respect to whether a vehicle reasonably deviated from the highway and whether it was reasonably foreseeable that the vehicle would land in an excavation thirty feet from the highway and flip and roll as a result of coming into contact with the excavation). Applying section 368 to this case, issues concerning whether IMC's placement of the pipe at the entrance to its property involved an unreasonable risk to others, whether IMC realized or should have realized the danger posed by the pipe, whether Mr. Poe was traveling with reasonable care, and whether it was foreseeable that a motorist such as Mr. Poe would fail to stop at the intersection and collide with the pipe were questions of fact to be decided by a jury.

CONCLUSION
A review of the record reveals the existence of multiple issues of fact bearing on the question of IMC's liability for the unfortunate accident at issue in this case. Accordingly, we reverse the final summary *405 judgment in favor of IMC, and we remand this case to the circuit court for further proceedings consistent with this opinion.
Reversed and remanded.
CASANUEVA and SILBERMAN, JJ., concur.
NOTES
[1] The facts, which are drawn from the pleadings, depositions, and affidavits in the record, are reviewed in the light most favorable to Mr. and Mrs. Poe as the nonmoving parties against whom final summary judgment was entered. Markowitz v. Helen Homes of Kendall Corp., 826 So.2d 256, 258-59 (Fla.2002).
[2] Hillsborough County, also named as a defendant in the personal injury action, did not move for summary judgment.
[3] For analysis of the three classifications of visitors upon the private property of others and the duty of care owed to a visitor on the property resulting from the applicable classification, see Wood v. Camp, 284 So.2d 691 (Fla.1973); Post v. Lunney, 261 So.2d 146 (Fla.1972); and Lukancich v. City of Tampa, 583 So.2d 1070 (Fla. 2d DCA 1991).

Because the accident occurred before October 1, 1999, the 1999 amendments to the statute concerning immunity from liability for injury to trespassers on real property are not pertinent to the issue in this case. See ch. 99-225, § 19, at 1413-15; § 36, at 1428, Laws of Fla. (amending section 768.075).
[4] In Drady, this court cited to the version of section 367 that appears in the earlier Restatement of Torts (1934). This version, which is substantially similar to the version that appears in the Restatement (Second) of Torts, provides:

A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.
[5] The First and Third Districts have both cited section 368 with approval. Scott v. Fla. Dep't of Transp., 752 So.2d 30, 34 (Fla. 1st DCA 2000); Fla. Power & Light Co. v. Macias, 507 So.2d 1113, 1115 (Fla. 3d DCA 1987). The Supreme Court of Florida has acknowledged the rule stated in section 368 without expressly adopting it. Whitt v. Silverman, 788 So.2d 210, 215 (Fla.2001).