32 So.3d 668 (2010)
Dianne BARRINGTON and Joshua S. Unger, Appellants,
v.
GRYPHON INVESTMENTS, INC., d/b/a Re/Max Excellence, Appellee.
No. 2D08-5234.
District Court of Appeal of Florida, Second District.
March 12, 2010.
Nancy E. Cason and Scott Westheimer of Syprett, Meshad, Resnick, Lieb, Dumbaugh, Jones, Krotec & Westheimer, P.A., Sarasota, for Appellants.
Sherri L. Johnson of Dent & Johnson, Chartered, Sarasota, for Appellee.
*669 MORRIS, Judge.
Dianne Barrington and Joshua S. Unger (the Agents) appeal a final summary judgment entered in favor of Gryphon Investments, Inc., d/b/a Re/Max Excellence (Re/Max). We reverse and remand for further proceedings.
In October 2007, the Agents filed a complaint against Re/Max for declaratory relief and breach of contract.[1] The complaint alleged that the Agents each signed an independent contractor agreement (Agreement) with Re/Max in 2006. The Agreements contain sections addressing the termination of the Agreements and provide that "[e]ither party, without cause, may terminate this Agreement at any time upon the giving of 60 days ['] advance written notice to the other." The Agreements also provide that Re/Max "may retain 25% of the commission earned by [the Agent], above and beyond the amounts required in this Agreement, to cover [Re/Max's] costs of bringing the transaction to closure after [the Agent's] termination date."
The complaint alleged that on or about September 30, 2006, the Agents gave notice of termination of the Agreements. After such notice was given, the Agents had several transactions proceed to closing. The Agents claimed that Re/Max deducted its standard fee of 5% from the Agents' commissions on those closings until November 1, 2006, when Re/Max began deducting 25% from the Agents' commissions. The Agents claimed that Re/Max relied on the 25% provision in the Agreements that was intended to compensate Re/Max for actual out-of-pocket expenses incurred by Re/Max up to 25% and that was not intended to permit Re/Max to retain a uniform 25% from the commissions on all posttermination closings. The Agents alleged that the 25% retained by Re/Max had no reasonable relationship to the amount actually incurred by Re/Max and that the withholding of those commissions was a penalty. The Agents sought a declaration that Re/Max's withholding of the 25% under the Agreements was invalid. The Agents also claimed that Re/Max breached the Agreements and wrongfully retained $18,550.07 from Barrington and $27,671.32 from Unger.
Re/Max filed a motion for summary judgment, arguing that Re/Max did not breach the Agreements because the Agreements authorized Re/Max to retain 25% of the Agents' commissions on sales closing after the termination date, which Re/Max alleged was November 21, 2006, as supported by the affidavit of its principal, Andrew Vac. Re/Max also argued that the 25% clause was not ambiguous but was consideration for Re/Max's execution of the Agreements and that it did not constitute an unenforceable liquidated damages clause.
The Agents filed a memorandum of law in opposition to the motion for summary judgment. The Agents contended that a latent ambiguity exists in the Agreements because Re/Max has never retained 25% of an agent's commission under other agent contracts containing similar provisions, as indicated by Vac's affidavit. The Agents also argued that Vac informed the Agents that the termination date would be November 30, 2006, but that Re/Max began withholding 25% from the commissions on closings occurring prior to that date. The Agents claimed that Re/Max owed the Agents commissions for closings occurring both before and after the termination date. *670 The Agents attached several documents to the memorandum but did not file any supporting affidavits.
After a hearing, the trial court granted Re/Max's motion for summary judgment and entered final summary judgment in Re/Max's favor. The trial court concluded that the Agreements are not ambiguous and that they permit Re/Max to deduct 25% from commissions on sales that closed after the termination date. The trial court also found that the Agents failed to submit evidence supported by affidavits that created a genuine issue of material fact.
The Agents then filed a motion for clarification and rehearing. The motion asked the trial court to clarify whether its ruling addressed the issue of whether the Agents were due any money from transactions that closed prior to the alleged termination date. The motion also asked for the trial court to reconsider the documents submitted in opposition to the motion for summary judgment. The Agents submitted an affidavit of Joshua S. Unger purportedly authenticating the documents. The trial court denied the motion.
On appeal, the Agents raise several issues, only one of which we discuss. The Agents argue that the 25% clause is latently ambiguous because even though it appears to authorize Re/Max to retain 25% of the commissions on posttermination closings, Re/Max never acted consistently in its application of the clause, as indicated by Vac's affidavit submitted in support of the motion for summary judgment.
We review a summary judgment using a de novo standard of review. Poe v. IMC Phosphates MP, Inc., 885 So.2d 397, 400 (Fla. 2d DCA 2004).
First, a summary judgment is proper only if there is no genuine issue of material fact, viewing every possible inference in favor of the party against whom summary judgment has been entered. Second, if there is no genuine issue of material fact, a summary judgment is proper only if the moving party is entitled to a judgment as a matter of law.
Id. at 400-01 (citations omitted). "[T]he burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met this burden, the opposing party is under no obligation to show that issues do remain to be tried." Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966).
Although not addressed by the parties below or on appeal, we believe that the contract provision contains a patent ambiguity because it provides that Re/Max may retain 25% of commissions earned by the Agents but then later provides that the retention of such commissions is to cover the costs of bringing the transactions to closure. "[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language." Crown Mgmt. Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984). On the face of the provision, it is unclear whether Re/Max may retain a full 25% of a commission if the actual costs of bringing the transaction to closure did not amount to the full 25%. However, because the Agents did not raise this specific issue, it is not before us.
Even if the contract was not patently ambiguous and could be read to clearly allow Re/Max to retain a full 25% of commissions regardless of the actual costs of the closings, we believe that a latent ambiguity exists based on evidence that the provision has not been applied by Re/Max in other cases to retain a full 25% of commissions. "A latent ambiguityas distinct from a patent ambiguityarises `where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous *671 evidence creates a necessity for interpretation or a choice among two or more possible meanings.'" Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659 (Fla. 2d DCA 2005) (quoting Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, 547 (Fla. 1st DCA 1973)); see also Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002-03 (Fla. 2d DCA 1995) (holding that where a latent ambiguity exists, parol evidence may be considered "in determining the parties' intent where the existence of some collateral or extraneous matter renders the contract's application uncertain"). "`[W]hen an agreement contains a latent ambiguity[,] ... the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.'" Mac-Gray Servs., Inc., 915 So.2d at 659-60 (quoting Griffin v. Fed. Deposit Ins. Corp., 532 So.2d 1358, 1360 (Fla. 2d DCA 1988)).
While the provision may on its face permit Re/Max to retain a full 25% of the commissions earned by the Agents regardless of the actual costs of the closings, it is latently ambiguous in light of Vac's affidavit demonstrating that Re/Max has not applied the provision similarly in other situations, thus suggesting that it was not intended to authorize Re/Max to retain a full 25% if the costs did not amount to 25%. There is an ambiguity as to what the parties intended when they entered into the contract. Because a latent ambiguity exists as to whether Re/Max was authorized to retain a full 25% of the commissions earned from closings after the termination date, the trial court erred in granting summary judgment on the declaratory judgment count as well as the breach of contract counts.
Because we are reversing the final summary judgment as to all counts of the complaint for the reason discussed above, we need not address the remaining issues raised by the Agents. We reverse and remand for proceedings consistent with this opinion.
Reversed; remanded.
WHATLEY, J., Concurs.
KELLY, J., Dissents with opinion.
KELLY, Judge, Dissenting.
I would affirm the trial court's decision. The provision at issue states that Re/Max "may retain 25% of the commission earned by Contractor, above and beyond the amounts required in this Agreement, to cover Broker's costs of bringing the transaction to closure after Contractor's termination date." Re/Max's right to retain an additional 25% is clear and unambiguous. The fact that in the past Re/Max had not invariably enforced that right against departing agents does not render the phrase ambiguous. The circumstance that Re/Max had the ability to exercise discretion in choosing whether to retain an additional 25% is obvious from the use of the word "may." The Agents' claim that the provision contains a latent ambiguity because in the past Re/Max had exercised its discretion and not enforced the 25% provision is illogical in light of the clear contractual language vesting discretion in Re/Max.
The Agents' argument is further undermined by their failure to offer a coherent explanation of the supposed ambiguity created by Re/Max's past application of the provision stating only that, in every other situation they were aware of, the word "may" meant "may," but in their situation Re/Max "utilized" the word "may" to mean "shall." What this amounts to is a claim that Re/Max, at least in the Agents' view, exercised its discretion arbitrarily, but it does not amount to a latent ambiguity. See, e.g., Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 *672 (Fla.1998). In Deni, the court explained that a latent ambiguity is one that arises when clear contractual language can apply to two or more different things or persons and extrinsic evidence is necessary to determine the alternative to which the words were intended to apply. Id. at 1139. As "a classic example" of a latent ambiguity, the court described a situation where a contract calls for goods to be delivered to "the green house on Pecan Street," but there are two green houses on the street. The extrinsic fact of the two green houses creates an uncertainty as to where the goods are to be delivered, thus requiring parol inquiry to determine which of the two alternatives, i.e., which green house, the parties intended. Id.; see also 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 33:40 (4th ed. Supp. 2009) (citing as "the classic illustration of a latent ambiguity," the English case where an agreement obligated the plaintiff to sell to the defendants a quantity of cotton `to arrive ex Peerless' from Bombay; however, it turned out there were two ships by that name who left Bombay carrying a shipment of cotton thus creating an ambiguity as to which shipment the defendants were obligated to purchase.). Here, there are no alternative factual scenarios to which the 25% clause can be applied. Moreover, the parol evidence the Agents have offered in support of their chosen meaning indicates only that in the past Re/Max had not claimed any additional commissions, a fact that in no way suggests that Re/Max, when it elected to retain additional commissions, intended to contractually limit the additional commissions to the actual costs of closing.
In what appears to be a related argument, the Agents point to the language of the provision itselfas opposed to any extrinsic matterand posit that it has two possible meanings: that Re/Max may retain a maximum of 25% to cover the costs actually incurred to bring a transaction to closing or that "25% can be retained arbitrarily for every post termination closing." There are myriad problems with this contention. Among them is the fact that the alleged ambiguity is created by the words themselves, not any extrinsic circumstance, and thus the ambiguity would be patent, not latent. See, e.g., v. Deni, 711 So.2d at 1139. Further, the argument in effect asks the court to rewrite the contract, and the latent ambiguity doctrine can "never serve as a means for circumventing the plain language" of a contact. Id. Finally, as noted in the majority opinion, to the extent the Agents' argument might be viewed as one claiming a patent ambiguity, the argument is not preserved. Even if it were, however, in my view the argument fails on its merits. The words "may retain 25% of the commission earned by Contractor" are clear and unambiguous, and the trial court was correct to refuse to rewrite the contract to read that Re/Max "may retain up to 25%."
NOTES
[1] The Agents also alleged counts for lost wages but later voluntarily dismissed those counts.