*669 MORRIS, Judge.
Dianne Barrington and Joshua S. Unger (the Agents) appeal a final summary judgment entered in favor of Gryphon Investments, Inc., d/b/a Re/Max Excellence (Re/ Max). We reverse and remand for further proceedings.
In October 2007, the Agents filed a complaint against Re/Max for declaratory relief and breach of contract.[1] The complaint alleged that the Agents each signed an independent contractor agreement (Agreement) with Re/Max in 2006. The Agreements contain sections addressing the termination of the Agreements and provide that “[ejither party, without cause, may terminate this Agreement at any time upon the giving of 60 days [’] advance written notice to the other.” The Agreements also provide that Re/Max “may retain 25% of the commission earned by [the Agent], above and beyond the amounts required in this Agreement, to cover [Re/ Max’s] costs of bringing the transaction to closure after [the Agent’s] termination date.”
The complaint alleged that on or about September 30, 2006, the Agents gave notice of termination of the Agreements. After such notice was given, the Agents had several transactions proceed to closing. The Agents claimed that Re/Max deducted its standard fee of 5% from the Agents’ commissions on those closings until November 1, 2006, when Re/Max began deducting 25% from the Agents’ commissions. The Agents claimed that Re/Max relied on the 25% provision in the Agreements that was intended to compensate Re/Max for actual out-of-pocket expenses incurred by Re/Max up to 25% and that was not intended to permit Re/Max to retain a uniform 25% from the commissions on all posttermination closings. The Agents alleged that the 25% retained by Re/Max had no reasonable relationship to the amount actually incurred by Re/Max and that the withholding of those commissions was a penalty. The Agents sought a declaration that Re/Max’s withholding of the 25% under the Agreements was invalid. The Agents also claimed that Re/Max breached the Agreements and wrongfully retained $18,550.07 from Barrington and $27,671.32 from Unger.
Re/Max filed a motion for summary judgment, arguing that Re/Max did not breach the Agreements because the Agreements authorized Re/Max to retain 25% of the Agents’ commissions on sales closing after the termination date, which Re/Max alleged was November 21, 2006, as supported by the affidavit of its principal, Andrew Vac. Re/Max also argued that the 25% clause was not ambiguous but was consideration for Re/Max’s execution of the Agreements and that it did not constitute an unenforceable liquidated damages clause.
The Agents filed a memorandum of law in opposition to the motion for summary judgment. The Agents contended that a latent ambiguity exists in the Agreements because Re/Max has never retained 25% of an agent’s commission under other agent contracts containing similar provisions, as indicated by Vac’s affidavit. The Agents also argued that Vac informed the Agents that the termination date would be November 30, 2006, but that Re/Max began withholding 25% from the commissions on closings occurring prior to that date. The Agents claimed that Re/Max owed the Agents commissions for closings occurring both before and after the termination date. *670 The Agents attached several documents to the memorandum but did not file any supporting affidavits.
After a hearing, the trial court granted Re/Max’s motion for summary judgment and entered final summary judgment in Re/Max’s favor. The trial court concluded that the Agreements are not ambiguous and that they permit Re/Max to deduct 25% from commissions on sales that closed after the termination date. The trial court also found that the Agents failed to submit evidence supported by affidavits that created a genuine issue of material fact.
The Agents then filed a motion for clarification and rehearing. The motion asked the trial court to clarify whether its ruling addressed the issue of whether the Agents were due any money from transactions that closed prior to the alleged termination date. The motion also asked for the trial court to reconsider the documents submitted in opposition to the motion for summary judgment. The Agents submitted an affidavit of Joshua S. Unger purportedly authenticating the documents. The trial court denied the motion.
On appeal, the Agents raise several issues, only one of which we discuss. The Agents argue that the 25% clause is latently ambiguous because even though it appears to authorize Re/Max to retain 25% of the commissions on posttermination closings, Re/Max never acted consistently in its application of the clause, as indicated by Vac’s affidavit submitted in support of the motion for summary judgment.
We review a summary judgment using a de novo standard of review. Poe v. IMC Phosphates MP, Inc., 885 So.2d 397, 400 (Fla. 2d DCA 2004).
First, a summary judgment is proper only if there is no genuine issue of material fact, viewing every possible inference in favor of the party against whom summary judgment has been entered. Second, if there is no genuine issue of material fact, a summary judgment is proper only if the moving party is entitled to a judgment as a matter of law.
Id. at 400-01 (citations omitted). “[T]he burden of proving the absence of a genuine issue of material fact is upon the moving party. Until it is determined that the movant has successfully met this burden, the opposing party is under no obligation to show that issues do remain to be tried.” Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966).
Although not addressed by the parties below or on appeal, we believe that the contract provision contains a patent ambiguity because it provides that Re/Max may retain 25% of commissions earned by the Agents but then later provides that the retention of such commissions is to cover the costs of bringing the transactions to closure. “[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language.” Crown Mgmt. Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984). On the face of the provision, it is unclear whether Re/Max may retain a full 25% of a commission if the actual costs of bringing the transaction to closure did not amount to the full 25%. However, because the Agents did not raise this specific issue, it is not before us.
Even if the contract was not patently ambiguous and could be read to clearly allow Re/Max to retain a full 25% of commissions regardless of the actual costs of the closings, we believe that a latent ambiguity exists based on evidence that the provision has not been applied by Re/Max in other cases to retain a full 25% of commissions. “A latent ambiguity — as distinct from a patent ambiguity — arises ‘where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous *671 evidence creates a necessity for interpretation or a choice among two or more possible meanings.’ ” Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So.2d 657, 659 (Fla. 2d DCA 2005) (quoting Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544, 547 (Fla. 1st DCA 1973)); see also Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002-03 (Fla. 2d DCA 1995) (holding that where a latent ambiguity exists, parol evidence may be considered “in determining the parties’ intent where the existence of some collateral or extraneous matter renders the contract’s application uncertain”). “ ‘[W]hen an agreement contains a latent ambiguityf,] ... the issue of the correct interpretation of the agreement is an issue of fact which precludes summary judgment.’ ” Mac-Gray Servs., Inc., 915 So.2d at 659-60 (quoting Griffin v. Fed. Deposit Ins. Corp., 532 So.2d 1358, 1360 (Fla. 2d DCA 1988)).
While the provision may on its face permit Re/Max to retain a full 25% of the commissions earned by the Agents regardless of the actual costs of the closings, it is latently ambiguous in light of Vac’s affidavit demonstrating that Re/Max has not applied the provision similarly in other situations, thus suggesting that it was not intended to authorize Re/Max to retain a full 25% if the costs did not amount to 25%. There is an ambiguity as to what the parties intended when they entered into the contract. Because a latent ambiguity exists as to whether Re/Max was authorized to retain a full 25% of the commissions earned from closings after the termination date, the trial court erred in granting summary judgment on the declaratory judgment count as well as the breach of contract counts.
Because we are reversing the final summary judgment as to all counts of the complaint for the reason discussed above, we need not address the remaining issues raised by the Agents. We reverse and remand for proceedings consistent with this opinion.
Reversed; remanded.
WHATLEY, J., Concurs.
KELLY, J., Dissents with opinion.

. The Agents also alleged counts for lost wages but later voluntarily dismissed those counts.